STATE OF NORTH CAROLINA v. ALDEN JEROME HARDEN

No. 427A94

(Filed 11 October 1996)

### 1. Constitutional Law § 344.1 (NCI4th)— capital murder— bench conferences—no error

The trial court did not err in a capital first-degree murder prosecution by conducting unrecorded bench conferences out of defendant's presence or in the absence of defense counsel where the record does not affirmatively show that defense counsel did not attend the bench conferences in question and reflects that defense counsel actually requested many of the conferences in question. Even assuming that one or more of these conferences occurred outside the presence of defendant or his counsel, any error was harmless because the court documented the subject matter of these conferences and the record demonstrates that none of these conferences implicated defendant's right to confrontation.

**Am Jur 2d, Criminal Law §§ 695, 696, 910 et seq.**

### 2. Criminal Law § 78 (NCI4th)— capital murder—pretrial publicity—change of venue denied—no error

The trial court did not err in a capital first-degree murder prosecution by denying defendant's motion for a change of venue for pretrial publicity where the trial court found that the media coverage of the circumstances of the crime was factual and that the media response to the incident was predominantly noninflammatory; defendant did not allege or attempt to prove that he was required to accept any juror who did not unequivocally state

**STATE v. HARDEN**

[344 N.C. 542 (1996)]

that he or she could put aside any pretrial information and decide the case solely on the evidence presented at trial; defendant concedes that the jurors who were selected advised the trial court that they could set aside pretrial publicity; and the trial court conducted an individual examination of each juror and excused those who gave an equivocal answer regarding putting pretrial information aside.

**Am Jur 2d, Criminal Law §§ 378, 389.**

**Pretrial publicity in criminal case as ground for change of venue. 33 ALR3d 17.**

3. **Homicide § 257 (NCI4th)— capital murder—killing of police officer with officer's weapon—evidence of premeditation and deliberation—evidence sufficient**

The trial court did not err in a capital first-degree murder prosecution arising from the shooting of two police officers by denying defendant's motion to dismiss the charges. Although defendant specifically argues that there was insufficient evidence that the killing of Officer Burnette was premeditated and deliberate, the State's evidence tended to show that defendant's intent changed sometime during his struggle with the officers from a mere attempt to flee to the killing of the officers to further his escape; defendant made the concerted effort to seize Officer Burnette's weapon, yank it from its holster, look down upon Officer Nobles, who was lying at his feet, and shoot him in the back of the head; and, having killed Nobles, defendant simply turned to the fallen officer Burnette, placed the barrel of the gun against the left side of Officer Burnette's head, and shot him.

**Am Jur 2d, Homicide §§ 437 et seq.**

**Homicide: presumption of deliberation or premeditation from the circumstances attending the killing. 96 ALR2d 1435.**

**Modern status of the rules requiring malice "afore-thought," "deliberation," or "premeditation," as elements of murder in the first degree. 18 ALR4th 961.**

4. **Homicide § 495 (NCI4th)— capital murder—deliberation— instructions**

The trial court did not err in a capital murder prosecution by refusing to instruct the jury on the elements of premeditation and

deliberation pursuant to defendant's request where the only sub-
stantive difference between the instruction given and defendant's
requested instruction is that defendant's requested instruction
requires the "deliberation" to occur before the scuffle or quarrel
began, which is an incorrect statement of the law. Deliberation
may occur during a scuffle or a quarrel between the defendant
and the victim if the emotions produced by the scuffle or quarrel
have not overcome defendant's faculties and reason.

**Am Jur 2d, Homicide § 501.**

**5. Evidence and Witnesses § 2148 (NCI4th)— capital mur-
der—police procedure—expert testimony excluded—no
abuse of discretion**

The trial court did not abuse its discretion in a capital first-
degree murder prosecution by excluding expert defense testi-
mony about whether the victims, police officers, were following
proper police procedures at the time they were murdered. The
evidence tended to show that defendant started backing up when
first approached by officers, then ran because he thought he had
crack cocaine in his possession; clearly, defendant was not
responding reasonably to arrest procedures and the witness's
opinion about what the proper arrest procedures might have been
was irrelevant to the circumstances of the case. Furthermore,
defendant's offer of proof did not reveal that the witness would
testify that the officers used excessive force. The testimony could
only have directed the jury's attention away from defendant's
actual conduct and confused it with evidence unrelated to the
legality of the arrest or the force used in attempting to apprehend
defendant.

**Am Jur 2d, Expert and Opinion Evidence §§ 1-7, 32-38,
43.**

**When will expert testimony "assist trier of fact" so as
to be admissible at federal trial under Rule 702 of Federal
Rules of Evidence. 75 ALR Fed. 461.**

**Evidence offered by defendant at federal criminal trial
as inadmissible, under Rules 403 of Federal Rules of
Evidence, on ground that probative value is substantially
outweighed by danger of unfair prejudice, confusion of
issues, or misleading the jury. 76 ALR Fed. 700.**

STATE v. HARDEN

[344 N.C. 542 (1996)]

**6. Jury § 260 (NCI4th)— capital murder—jury selection— peremptory challenges—Batson challenge**

There was no error in a capital murder prosecution in the prosecutor's use of peremptory challenges where the prosecutor used eight of his fourteen peremptory challenges to remove black venire members, leaving only one black juror sitting on the final jury, and defendant specifically argues that the court permitted the prosecutor to peremptorily challenge two black females for a pretextual reason. The prosecutor gave reasons for the dismissal of each juror, so that the question of whether defendant met his initial burden of showing discrimination need not be addressed, and, with respect to the two black females, the prosecutor offered as reasons for excusing the first her youth and immaturity, along with concern about her residence (the YWCA) and her change in response regarding knowledge about the case. As for the second, she had small children, she expressed reservations about job security and loss of income, the prosecutor could not get her to elaborate when she said she did not oppose the death penalty, and the prosecutor felt she would hold the State to a higher burden than the law requires. There was sufficient evidence to support the trial court's finding that the reasons proffered by the prosecutor were race-neutral.

**Am Jur 2d, Jury §§ 235, 244.**

**Use of peremptory challenges to exclude ethnic and racial groups, other than black Americans, from criminal jury—post-*Batson* state cases. 20 ALR5th 398.**

**Use of peremptory challenges to exclude ethnic and racial groups, other than black Americans, from criminal jury—post-*Batson* federal cases. 110 ALR Fed. 690.**

**7. Evidence and Witnesses §§ 1688, 1694, 1700 (NCI4th)— capital murder of police officers—photographs of victims— appearance in life, at scene, autopsy**

The trial court did not abuse its discretion in the capital first-degree murder prosecution of defendant for the murder of two police officers by overruling defense objections to the introduction of photographs of the victims. Two of the ten photographs were introduced to illustrate the testimony of the victims' relatives regarding the victims' appearance in life, two more were used to illustrate the testimony of police officers who carried the

STATE v. HARDEN

[344 N.C. 542 (1996)]

victims to the hospital, and the medical examiner used the remaining six photographs to illustrate his testimony. Whether the use of photographic evidence is excessive in light of its illustrative value and whether the evidence is more probative than prejudicial are matters generally left to the sound discretion of the trial court.

**Am Jur 2d, Evidence §§ 971, 972; Homicide §§ 417 et seq.**

**Admissibility in homicide prosecution of allegedly gruesome or inflammatory visual recording of crime scene. 37 ALR5th 515.**

**8. Evidence and Witnesses § 1501 (NCI4th)— capital murder—killing of police officers—introduction of their clothes**

The trial court did not err in a prosecution for capital first-degree murder arising from the killing of two police officers by allowing the introduction of the bloody clothes of both officers. The condition of the officers' clothing tended to show the circumstances surrounding the struggle with defendant, the location and number of wounds, and the officers' relative sizes. Bloody clothing of a victim that is corroborative of the prosecutor's case, is illustrative of the testimony of a witness, or throws any light on the circumstances of the crime is relevant and admissible evidence at trial.

**Am Jur 2d, Homicide § 413.**

**9. Criminal Law § 1312 (NCI4th)— capital sentencing—prior record—anecdotal evidence**

The trial court did not err in a capital sentencing proceeding by allowing presentation of anecdotal evidence regarding defendant's prior criminal record and bad acts. Although defendant argued that he was willing to stipulate to having a previous criminal record and that the prosecutor is limited to proving those convictions through official court records, the use of witnesses in a capital sentencing proceeding to prove the circumstances of prior convictions has been approved.

**Am Jur 2d, Criminal Law §§ 598 et seq.**

STATE v. HARDEN

[344 N.C. 542 (1996)]

10. **Criminal Law §§ 1357, 1360 (NCI4th)— capital sentencing—instructions—impaired capacity—mental or emotional disturbance—use of conjunctive in each**

There was no plain error in a capital sentencing proceeding where defendant argued that the use of the conjunctive in instructions on impaired capacity and mental or emotional disturbance impaired the jury's consideration of relevant mitigating evidence. The court's instruction allowed the jury to consider either or both of defendant's psychological problems in the context of the mental or emotional circumstance. With respect to the impaired capacity circumstance, an expert in forensic psychiatry testifying for defendant did not testify that either one of defendant's disorders alone resulted in impaired capacity but that defendant's capacity to appreciate the criminality of his conduct was impaired because he was suffering from both schizotypal personality disorder and crack cocaine addiction. Both of the trial court's instructions therefore comported with defendant's evidence.

**Am Jur 2d, Criminal Law §§ 598 et seq., 628.**

**Sufficiency of evidence, for purposes of death penalty, to establish statutory aggravating circumstance that murder was committed to avoid arrest or prosecution, to effect escape from custody, to hinder governmental function or enforcement of law, and the like—post-*Gregg* cases. 64 ALR4th 755.**

**Sufficiency of evidence, for purposes of death penalty, to establish statutory aggravating circumstance that defendant was previously convicted of or committed other violent offense, had history of violent conduct, posed continuing threat to society, and the like—post-*Gregg* cases. 65 ALR4th 838.**

**Sufficiency of evidence, for death penalty purposes, to establish statutory aggravating circumstance that murder was committed in course of committing, attempting, or fleeing from other offense, and the like—post-*Gregg* cases. 67 ALR4th 887.**

11. **Criminal Law § 496 (NCI4th)— capital sentencing—jury's request to review transcript denied—no plain error**

There was no plain error in a capital sentencing proceeding where the trial court denied the jury's request for a transcript of

defendant's testimony and the testimony of defense experts in forensic psychiatry and psychopharmacology. The trial court was aware that it had discretion to produce the transcript and the record shows that the trial court exercised its discretion when deciding not to honor the jury's request. Also, it is clear that the trial court had decided that justice would be better served if the jury deliberations were not delayed to produce the requested transcripts and the trial court's instruction that the jurors rely upon their individual and collective memory of the testimony is indicative of further exercise of its discretion.

**Am Jur 2d, Trial §§ 1577, 1578, 1580, 1671.**

**Permitting documents or tape recordings containing confessions of guilt or incriminating admissions to be taken into jury room in criminal case. 37 ALR3d 238.**

**12. Criminal Law § 486 (NCI4th)— capital sentencing—publicity concerning another crime during deliberations—no voir dire**

The trial court did not abuse its discretion in a capital sentencing proceeding arising from the murder to two Charlotte police officers by failing to conduct a jury *voir dire* regarding extensive publicity in the local media concerning shootings of two South Carolina officers during the jury's deliberations. The trial court is in the best position to know whether or to what extent matters extraneous to the trial might affect the jury and to take proper precautions to protect the defendant's right to a fair trial. The trial court's decisions on these issues will not be disturbed on appeal absent an abuse of discretion.

**Am Jur 2d, Trial §§ 1546, 1547.**

**Juror's reading of newspaper account of trial in state criminal case during its progress as ground for mistrial, new trial, or reversal. 46 ALR4th 11.**

**13. Criminal Law § 1348 (NCI4th)— capital sentencing—mitigation—definition**

The trial court did not err in a capital sentencing proceeding in its definition of mitigating circumstances where defendant contended that the court defined mitigation too narrowly and limited mitigation to evidence which was extenuating or which

reduced defendant's moral culpability. Defendant's contention has been consistently rejected.

**Am Jur 2d, Criminal Law §§ 598 et seq., 628.**

**Sufficiency of evidence, for purposes of death penalty, to establish statutory aggravating circumstance that murder was committed to avoid arrest or prosecution, to effect escape from custody, to hinder governmental function or enforcement of law, and the like—post-*Gregg* cases. 64 ALR4th 755.**

**Sufficiency of evidence, for purposes of death penalty, to establish statutory aggravating circumstance that defendant was previously convicted of or committed other violent offense, had history of violent conduct, posed continuing threat to society, and the like—post-*Gregg* cases. 65 ALR4th 838.**

**Sufficiency of evidence, for death penalty purposes, to establish statutory aggravating circumstance that murder was committed in course of committing, attempting, or fleeing from other offense, and the like—post-*Gregg* cases. 67 ALR4th 887.**

**14. Criminal Law § 1373 (NCI4th)— death sentence—not disproportionate**

A sentence of death was not disproportionate where the record fully supported the aggravating circumstances found by the jury and there was no indication that the sentences of death were imposed under the influence of passion, prejudice, or any other arbitrary consideration. The evidence in this case clearly shows that defendant deliberately murdered two police officers for the purpose of evading a lawful arrest. The North Carolina Supreme Court has consistently noted that it has never found disproportionality in a case in which the defendant was convicted of killing more than one victim; there is no doubt that defendant took the weapon from one officer's holster for the purpose of shooting both officers; there is no doubt that prior to his encounter with the officers defendant stole a van and robbed and threatened two victims; and the jury found that defendant murdered the officers to avoid arrest and that he had been engaged in a course of conduct which included crimes of violence against others. The jury's finding of the prior conviction of a violent

felony aggravating circumstance is significant; none of the cases in which the death sentence was found to be disproportionate included this aggravating circumstance. The present case is more similar to certain cases in which the sentence of death was found proportionate than to those in which the sentence was found disproportionate or to those in which juries have consistently returned recommendations of life imprisonment.

**Am Jur 2d, Criminal Law § 628.**

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from judgments imposing sentences of death entered by Saunders, J., on 12 August 1994 in Superior Court, Mecklenburg County, upon jury verdicts finding defendant guilty of two counts of first-degree murder. Heard in the Supreme Court 9 September 1996.

*Michael F. Easley, Attorney General, by Thomas J. Ziko, Special Deputy Attorney General, for the State.*

*Richard B. Glazier for defendant-appellant.*

MITCHELL, Chief Justice.

Defendant was indicted on 18 October 1993 for the first-degree murders of Anthony A. Nobles and John T. Burnette. He was tried capitally at the 5 July 1994 Criminal Session of Superior Court, Mecklenburg County. The jury found defendant guilty of both counts of first-degree murder on the theory of premeditation and deliberation. After a separate capital sentencing proceeding, the jury recommended a sentence of death for each murder, and the trial court sentenced defendant accordingly.

The State's evidence tended to show *inter alia* that on 5 October 1993, defendant shot and killed two Charlotte police officers, Anthony A. Nobles and John T. Burnette, who were attempting to apprehend him. The State called thirty-four witnesses during the guilt/innocence phase of the trial. Detailed testimony was presented tending to show that defendant began the day by stealing a green Ford Aerostar van from a local hotel. Defendant then robbed Rolfe Sukkert of his wallet, threatening to injure him or Sukkert's six-month-old grandson. Defendant next proceeded to assault and rob Charles Cook at another hotel. Officers Nobles and Burnette spotted a vehicle fitting the description and license tag of the stolen Aerostar van and requested "back-up" by radio. Witnesses testified that they

STATE v. HARDEN

[344 N.C. 542 (1996)]

saw the officers chase and tackle defendant and heard shots being fired. A five-year-old eyewitness testified that he saw defendant fighting with the officers on the ground, and then he saw defendant shoot the officers. Another witness testified that after hearing gunshots, she saw defendant walking out of the woods and heard him state, "Two down, two down."

Defendant testified on his own behalf and admitted that he shot the two police officers, but stated that he did so only because he believed that the officers intended to shoot him. Defendant testified he then left the scene and hid under a tree for approximately four hours. When he left his hiding place, he was spotted by other officers searching for him. Defendant was pursued, apprehended, and taken into custody. Defendant gave a statement to the police, detailing events leading up to and including the shootings.

[1] By his first assignment of error, defendant contends that the trial court conducted unrecorded bench conferences out of his presence or in the absence of defense counsel in violation of defendant's rights under the Sixth Amendment to the United States Constitution and Article I, Section 23 of the North Carolina Constitution.

Defendant relies on both his confrontation rights and on this Court's decision in *State v. Buchanan*, 330 N.C. 202, 410 S.E.2d 832 (1991). In *Buchanan*, this Court held that

a defendant's state constitutional right to be present at all stages of his capital trial is not violated when, with defendant present in the courtroom, the trial court conducts bench conferences, even though unrecorded, with counsel for both parties. If, however, the subject matter of the conference implicates the defendant's confrontation rights, or is such that the defendant's presence would have a reasonably substantial relation to his opportunity to defend, the defendant would have a constitutional right to be present. The burden is on the defendant to show the usefulness of his presence in order to prove a violation of his right to presence. Once a violation of the right is apparent, the burden shifts to the State to show that it is harmless beyond a reasonable doubt.

*Id.* at 223-24, 410 S.E.2d at 845 (citations omitted).

Since deciding *Buchanan*, this Court has had occasion to address the issue of a criminal defendant's right to personal presence as guaranteed by both the United States Constitution and the North Carolina Constitution. In *State v. Bacon*, 337 N.C. 66, 446 S.E.2d 542 (1994),

**STATE v. HARDEN**

[344 N.C. 542 (1996)]

*cert. denied,* —— U.S. ——, 130 L. Ed. 2d 1083 (1995), this Court held that

> even unrecorded bench conferences with counsel for both parties, conducted with the defendant in the courtroom, do not violate the defendant's right to be present unless the conference implicates the defendant's confrontation rights or is such that the defendant's presence would have a reasonably substantial relation to his opportunity to defend. Defendant bears the burden of demonstrating the usefulness of his presence.

*Id.* at 85, 446 S.E.2d at 551 (citation omitted).

The record does not affirmatively show that defense counsel did not attend the bench conferences in question. To the contrary, the record reflects that defense counsel actually requested many of the conferences in question. Absent evidence in the record that defendant was not present in the courtroom, defendant cannot claim that the lack of evidence of his presence constitutes error. *See State v. Daughtry,* 340 N.C. 488, 517, 459 S.E.2d 747, 762 (1995), *cert. denied,* —— U.S. ——, 133 L. Ed. 2d 739 (1996). Even if we assume, *arguendo,* that one or more of these conferences occurred outside of the presence of defendant or his counsel, any error was harmless beyond a reasonable doubt. The court documented the subject matter of these conferences either at the time of the conferences or later in the transcript, and the record demonstrates that none of these conferences implicated defendant's right to confrontation. This assignment of error is overruled.

**[2]** By another assignment of error, defendant contends that the trial court denied his federal and state constitutional right to a fair trial by an impartial jury by denying his motion for a change of venue. Defendant argues that the extreme amount of newspaper and television coverage inflamed the entire community for many weeks following the murders. Defendant presented a substantial number of reports and witnesses to illustrate the level of pretrial publicity and its effects on any prospective jurors from within the Charlotte area.

The test for determining whether a change of venue should be granted is whether "there is a reasonable likelihood that the defendant will not receive a fair trial." *State v. Jerrett,* 309 N.C. 239, 254, 307 S.E.2d 339, 347 (1983). The burden is on the defendant to show a reasonable likelihood that the prospective jurors will base their decision in the case upon pretrial information rather than the evidence pre-

sented at trial and will be unable to remove from their minds any preconceived impressions they might have formed. *Id.* at 255, 307 S.E.2d at 347. This determination rests within the trial court's sound discretion and will not be disturbed on appeal absent a showing of an abuse of discretion. *State v. Alston,* 341 N.C. 198, 225, 461 S.E.2d 687, 701 (1995), *cert. denied,* —— U.S. ——, 134 L. Ed. 2d 100 (1996).

For a defendant to meet his burden of showing that pretrial publicity prevented him from receiving a fair trial, he must show *inter alia* that jurors had prior knowledge concerning the case, that he exhausted his peremptory challenges, and that a juror objectionable to him sat on the jury. *Jerrett,* 309 N.C. at 255, 307 S.E.2d at 347-48. In determining whether a defendant has met his burden of showing prejudice, it is always relevant to consider whether the chosen jurors stated that they could ignore any prior knowledge or earlier-held opinions and decide the case solely on the evidence presented at trial. *Id.* at 255, 307 S.E.2d at 348. "The best and most reliable evidence as to whether existing community prejudice will prevent a fair trial can be drawn from prospective jurors' responses to questions during the jury selection process." *State v. Madric,* 328 N.C. 223, 228, 400 S.E.2d 31, 34 (1991).

After reviewing the record, we conclude that defendant has failed to show that the trial court abused its discretion in denying his motion for a change of venue. First, the trial court found that the media coverage of the circumstances of the crime was factual. The trial court also found that the media response to the incident was predominantly noninflammatory. Defendant does not allege and makes no attempt to prove that he was required to accept any juror who did not unequivocally state that he or she could put aside any pretrial information and decide the case solely on the evidence presented at trial. Defendant even concedes that the jurors who were selected advised the trial court that they could set aside pretrial publicity. Further, the trial court conducted an individual examination of each juror and excused those who gave an equivocal answer regarding putting pretrial information aside. Because defendant cannot show that the pretrial publicity was inflammatory and prejudicial and prevented him from receiving a fair trial, this assignment of error is overruled.

[3] By another assignment of error, defendant contends that the trial court erred in denying his motion to dismiss the charges of first-degree murder. Defendant specifically argues that there was insuffi-

cient evidence that the killing of Officer Burnette was premeditated and deliberate. We disagree.

When considering a motion to dismiss for insufficiency of the evidence, the trial court must determine whether there is substantial evidence of each element of the offense charged and of the defendant being the perpetrator of the offense. *State v. Earnhardt*, 307 N.C. 62, 65-66, 296 S.E.2d 649, 651 (1982). The evidence must be considered in the light most favorable to the State, and the State is entitled to every reasonable inference to be drawn from the evidence. *State v. Quick*, 329 N.C. 1, 405 S.E.2d 179 (1991). First-degree murder is the unlawful killing of another human being with malice, premeditation, and deliberation. N.C.G.S. § 14-17 (1993); *State v. Bonney*, 329 N.C. 61, 77, 405 S.E.2d 145, 154 (1991). "Premeditation means that the act was thought out beforehand for some length of time, however short; but no particular amount of time is necessary for the mental process of premeditation." *State v. Gladden*, 315 N.C. 398, 430, 340 S.E.2d 673, 693, *cert. denied*, 479 U.S. 871, 93 L. Ed. 2d 166 (1986). Deliberation is an intent to kill carried out in a "cool state of blood" without the influence of a violent passion or a sufficient legal provocation. *State v. Olson*, 330 N.C. 557, 564, 411 S.E.2d 592, 595 (1992).

The evidence, when considered in the light most favorable to the State, is sufficient to permit a rational juror to find that defendant killed the officers with premeditation and deliberation. The State's evidence tended to show that sometime during defendant's struggle with the officers, his intent changed from a mere attempt to flee to the killing of the officers to further his escape. Defendant made the concerted effort to seize Officer Burnette's weapon; yank it from the officer's holster; look down upon Officer Nobles, who was lying at his feet; and shoot him in the back of the head. Having killed Nobles, defendant simply turned to the fallen Officer Burnette, placed the barrel of the gun against the left side of Officer Burnette's head, and shot him. Based on this evidence, a reasonable juror could find that defendant killed the officers after premeditation and deliberation. This assignment of error is overruled.

**[4]** By another assignment of error, defendant contends that the trial court erred in refusing to instruct the jury on the elements of premeditation and deliberation pursuant to the following written request:

A killing committed during the course of a quarrel or scuffle may constitute first degree murder if the defendant formed the

intent to kill in a cool state of blood *before* the quarrel or scuffle began and the killing during the quarrel or scuffle was the product of this earlier formed intent. If, however, the killing was the product of a specific intent to kill formed under the influence of the provocation of the quarrel or struggle itself, then there would be no deliberation and hence no murder in the first degree. Therefore, if the State has failed to prove to you beyond a reasonable doubt that [defendant] formed the intent to kill Officers Burnette and Nobles *before* the scuffle, it would be your duty to find [defendant] Not Guilty of First Degree Murder.

(Emphasis added.) Defendant cites *State v. Misenheimer*, 304 N.C. 108, 282 S.E.2d 791 (1981), as authority for the appropriateness of this requested instruction.

As long as the trial court gives a requested instruction in substance, it is not error for a trial court to refuse to give a requested instruction verbatim, even if the request is based on language from this Court. *State v. Thompson*, 328 N.C. 477, 490-91, 402 S.E.2d 386, 393 (1991). In this case, the trial court instructed the jury that before it could convict defendant of the first-degree murder of either Officer Burnette or Officer Nobles, it had to find beyond a reasonable doubt that

[defendant] acted with premeditation; that is that he formed the intent to kill [the victim] over some period of time, however short, before he acted.

Fifth, that [defendant] acted with deliberation, which means that he acted while he was in a cool state of mind. This does not mean that there had to be a total absence of passion or emotion. If the intent to kill was formed with a fixed purpose, not under the influence of some suddenly aroused passion, it is immaterial that he was in a state of passion or excited when that intent was carried into effect.

The only substantive difference between the court's instruction, which is taken from N.C.P.I.—Crim. 206.10, and defendant's requested instruction is that defendant's requested instruction requires the "deliberation" to occur *before* the scuffle or quarrel began. This is an incorrect statement of the law. Deliberation may occur during a scuffle or a quarrel between the defendant and the victim if the emotions produced by the scuffle or quarrel have not overcome the defendant's faculties and reason. *State v. Hill*, 311 N.C. 465, 470, 319 S.E.2d 163,

167 (1984); *see also State v. Simpson,* 341 N.C. 316, 347, 462 S.E.2d 191, 209 (1995) (not error for the trial court to refuse to give requested instruction when it is an incorrect statement of law), *cert. denied,* —— U.S. ——, 134 L. Ed. 2d 194 (1996). Thus, the trial court did not err in refusing to give defendant's requested instruction, as it was not an accurate statement of the law. This assignment of error is overruled.

**[5]** By another assignment of error, defendant contends that the trial court erred by excluding defense witness Ronald Guerrette's testimony regarding whether the victims were following proper police procedures at the time they were murdered. Defendant argues that this testimony was relevant to his defense of self-defense.

The admission of expert testimony is governed by the North Carolina Rules of Evidence. In *State v. Anderson,* 322 N.C. 22, 366 S.E.2d 459, *cert. denied,* 488 U.S. 975, 102 L. Ed. 2d 548 (1988), this Court summarized those rules as follows:

> The admissibility of expert testimony in North Carolina is now governed by Rule 702 of our Rules of Evidence. N.C.G.S. § 8C-1, Rule 702 (1986). We have construed that rule to mean that: "Expert testimony is properly admissible when it can assist the jury in drawing certain inferences from facts and the expert is better qualified than the jury to draw such inferences." *State v. Evangelista,* 319 N.C. 152, 163, 353 S.E.2d 375, 383 (1987). In applying the rule, the trial court is afforded wide discretion and will be reversed only for an abuse of that discretion. *See id.* at 164, 353 S.E.2d at 384; *State v. Knox,* 78 N.C. App. 493, 337 S.E.2d 154 (1985). Further, under Rule 403 even relevant evidence may properly be excluded by the trial court if its probative value is outweighed by the danger that it would confuse the issues before the court or mislead the jury. *State v. Mason,* 315 N.C. 724, 731, 340 S.E.2d 430, 434-35 (1986). Whether to exclude expert testimony for this reason also rests within the sound discretion of the trial court, which will be reversed only for an abuse of discretion. *Id.*

*Anderson,* 322 N.C. at 28, 366 S.E.2d at 463.

Applying the foregoing principles in reviewing the trial court's exclusion of Ronald Guerrette's testimony, we conclude that the trial court did not abuse its discretion. Rather, the trial court acted well within its discretion in excluding the proffered expert testimony on

the ground that it would not assist the jury in understanding the evidence or determining a fact in issue. The evidence in this case tended to show that when the officers first approached defendant, he started backing up and then ran because he thought he had crack cocaine in his possession. Clearly, defendant was not responding reasonably to the arrest procedures. Therefore, Guerrette's opinion about what the proper arrest procedures might have been was irrelevant to the circumstances in this case.

Further, defendant's offer of proof regarding Guerrette's testimony did not reveal that Guerrette would testify that the officers used excessive force in attempting to make the arrest. Thus, his testimony could only have directed the jury's attention away from defendant's actual conduct and confused it with evidence unrelated to the legality of the arrest or the force the officers used in attempting to apprehend defendant. Accordingly, we conclude that the trial court did not abuse its discretion in excluding the proffered testimony. This assignment of error is overruled.

**[6]** By another assignment of error, defendant contends that his right to be tried by a jury selected without regard to race was violated by the prosecutor's discriminatory use of peremptory challenges in violation of *Batson v. Kentucky*, 476 U.S. 79, 90 L. Ed. 2d 69 (1986).

In *Batson*, the United States Supreme Court set out a three-pronged process to determine whether a prosecutor impermissibly excluded prospective jurors because of their race. First, a criminal defendant must make out a *prima facie* case of discrimination by demonstrating that the prosecutor exercised peremptory challenges on the basis of race and that this fact and other relevant circumstances raise an inference of discrimination. *Id.* at 96, 90 L. Ed. 2d at 87-88. Here, the prosecutor gave reasons for the dismissal of each juror in question. Accordingly, we need not address the question of whether defendant met his initial burden of showing discrimination and may proceed as if a *prima facie* case had been established. *State v. Robinson*, 330 N.C. 1, 17, 409 S.E.2d 288, 297 (1991).

Second, once a defendant has made a *prima facie* case of discrimination, the State must come forward with race-neutral explanations for the peremptory challenges. *Purkett v. Elem*, —— U.S. ——, ——, 131 L. Ed. 2d 834, 839 (1995). However, the law "does not demand [a race-neutral] explanation that is persuasive, or even plausible. 'At this step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the

STATE v. HARDEN

[344 N.C. 542 (1996)]

prosecutor's explanation, the reason offered will be deemed race neutral.'" *Id.* (quoting *Hernandez v. New York*, 500 U.S. 352, 360, 114 L. Ed. 2d 395, 406 (1991)).

Finally, the trial court must "determine whether the defendant has carried his burden of proving purposeful discrimination." *Hernandez v. New York*, 500 U.S. 352, 359, 114 L. Ed. 2d 395, 405 (1991). In evaluating the State's explanations, a reviewing court should remember that the trial court's findings "largely will turn on evaluation of credibility, [and so] should give those findings great deference." *Batson*, 476 U.S. at 98 n.21, 90 L. Ed. 2d at 89 n.21. The findings of a trial court are not to be overturned unless the appellate court is "convinced that its determination was clearly erroneous." *Hernandez*, 500 U.S. at 365, 114 L. Ed. 2d at 412.

Defendant argues that the prosecutor in this case used eight of his fourteen peremptory challenges to remove black venire members, leaving only one black juror sitting on the final jury. Defendant contends that race was a motivating factor for the prosecutor's dismissal of prospective black jurors. Defendant specifically argues that, over his objection, the trial court permitted the prosecutor to peremptorily challenge Shannon Smith and Linda Stein, both black females, for a pretextual reason.

With respect to Smith, the prosecutor offered her youth and immaturity as reasons for excusing her. The prosecutor also indicated concern about her residence (she lived at the YWCA) and her change in response regarding having knowledge about the case (she denied it at first and then said she had seen something in the paper). Based on those statements, the trial court allowed the challenges. The trial court subsequently noted in the record that Smith had been twenty-four minutes late for court that morning and that she had altered her testimony regarding exposure to pretrial publicity.

With respect to Stein, the prosecutor indicated four concerns in response to defendant's *Batson* motion: (1) she had small children; (2) she expressed reservations about job security and loss of income; (3) although she said she did not oppose the death penalty, the prosecutor could not get her to elaborate; and (4) the prosecutor felt that she would hold the State to a higher burden of proof than the law requires.

After careful review of the record, we conclude that the prosecutor's *voir dire* questioning of Smith and Stein shows that there was

STATE v. HARDEN

[344 N.C. 542 (1996)]

sufficient evidence to support the trial court's finding that the reasons proffered by the prosecutor were race-neutral. This assignment of error is therefore overruled.

[7] By another assignment of error, defendant contends that the trial court erred by overruling his objections to the admission of photographs of the victims and the victims' uniforms. Defendant argues that the crime scene and autopsy photographs were unnecessary. Defendant maintains that the graphic nature of the witnesses' testimony precluded the necessity for the admission of the photographs. Furthermore, there was no dispute as to the identity of the victims or the cause of their deaths. Therefore, defendant argues the photographs should have been excluded.

"Photographs of a homicide victim may be introduced even if they are gory, gruesome, horrible or revolting, so long as they are used for illustrative purposes and so long as their excessive or repetitious use is not aimed solely at arousing the passions of the jury." *State v. Hennis*, 323 N.C. 279, 284, 372 S.E.2d 523, 526 (1988). Whether the use of photographic evidence is excessive in light of its illustrative value and whether the evidence is more probative than prejudicial are matters generally left to the sound discretion of the trial court. *Id.* at 285, 372 S.E.2d at 527. Abuse will be found only where the trial court's ruling is "manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *Id.*

A review of the record in this case shows that the prosecutor used a total of ten photographs of both victims. The prosecutor used two of these photographs to help illustrate the testimony of the victims' relatives regarding the victims' appearance in life. We have held that it is not error to admit photographs depicting a victim as he looked when he was alive. *State v. Goode*, 341 N.C. 513, 539-40, 461 S.E.2d 631, 646-47 (1995). The prosecutor used two more photographs to illustrate the testimony of the police officers who carried the victims to the hospital. The medical examiner used the remaining six photographs to illustrate his testimony regarding abrasions of the victims' bodies, the entrance site of the bullets, the bullets' trajectory, and the burned area around Officer Burnette's wound which indicated that the muzzle of the gun was pressed against his head when the fatal shot was fired. The use of the photographs was not excessive or repetitious. Therefore, we conclude that the trial court did not abuse its discretion in admitting these photographs for illustrative purposes.

**[8]** Defendant also contends that the introduction of the bloody clothes of both officers was unrelated to any issue in the case and was cumulative. Specifically, defendant argues that the sole purpose for the introduction of the bloody clothes was to sway the jury through emotion, sympathy for the victims, and anger at defendant. We disagree.

The condition of the officers' clothing in this case tended to show the circumstances surrounding the officers' struggle with defendant, the location and number of wounds, and the officers' relative sizes. Bloody clothing of a victim that is corroborative of the prosecutor's case, is illustrative of the testimony of a witness, or throws any light on the circumstances of the crime is relevant and admissible evidence at trial. *See State v. Knight,* 340 N.C. 531, 559, 459 S.E.2d 481, 498 (1995). Therefore, this assignment of error is overruled.

**[9]** By another assignment of error, defendant contends that the trial court erred in the capital sentencing proceeding by allowing the presentation of anecdotal evidence regarding his prior criminal record and bad acts. Defendant argues that because he was willing to stipulate to having a previous criminal record, the prosecutor is limited to proving those prior convictions through official court records and cannot introduce testimony of the victims to prove the circumstances surrounding those convictions. Defendant relies on this Court's decision in *State v. Silhan,* 302 N.C. 223, 275 S.E.2d 450 (1981).

In *Silhan,* this Court stated that

the most appropriate way to show the "prior felony" aggravating circumstance would be to offer duly authenticated court records. Testimony of the victims themselves should not ordinarily be offered unless such testimony is necessary to show that the crime for which defendant was convicted involved the use or threat of violence to the person.

*Id.* at 272, 275 S.E.2d at 484. However, we have approved the use of witnesses in a capital sentencing proceeding to prove the circumstances of prior convictions. In *State v. Roper,* 328 N.C. 337, 402 S.E.2d 600, *cert. denied,* 502 U.S. 902, 116 L. Ed. 2d 232 (1991), we found no error in the admission of testimony by a former SBI agent who had investigated the prior felony to support the (e)(3) aggravating circumstance. The agent was allowed to read into the record hearsay statements of a person who heard the defendant say to the victim of the prior crime that "if he didn't die, he would shoot him

**STATE v. HARDEN**

[344 N.C. 542 (1996)]

again." *Id.* at 364, 402 S.E.2d at 615. Likewise, in *State v. Ward*, 338 N.C. 64, 449 S.E.2d 709 (1994), *cert. denied,* —— U.S. ——, 131 L. Ed. 2d 1013 (1995), we held that the State is entitled to present witnesses in the capital sentencing proceeding of the trial to prove the circumstances of prior convictions and is not limited to the introduction of evidence of the record or conviction. *Id.* at 120, 449 S.E.2d at 740-41. This assignment of error is overruled.

**[10]** By another assignment of error, defendant contends that the trial court erred in giving deficient and misleading instructions on two statutory mitigating circumstances: mental or emotional disturbance, N.C.G.S. § 15A-2000(f)(2) (1988) (amended 1994), and impaired capacity, N.C.G.S. § 15A-2000(f)(6). Defendant argues that the trial court improperly instructed in the conjunctive for both circumstances, thereby constricting the scope of each. The jury found the (f)(2) circumstance, but did not find the (f)(6) circumstance. Because defendant did not object to the instructions at trial, we review this issue for plain error. *See State v. Payne*, 337 N.C. 505, 526-29, 448 S.E.2d 93, 106-07 (1994), *cert. denied,* —— U.S. ——, 131 L. Ed. 2d 292 (1995).

The trial court instructed that the jury would find the (f)(2) circumstance if it determined that defendant was under the influence of a mental or emotional disturbance at the time of the murder as a result of "schitzotypal [sic] personality disorder and from crack cocaine addiction." Similarly, the trial court instructed the jury to find the (f)(6) circumstance if it found that defendant "had consumed crack cocaine and suffered schitzotypal [sic] personality disorder and that this impaired his capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law." Defendant argues that the use of the conjunctive "and" in these instructions impaired the jury's consideration of relevant mitigating evidence. We disagree.

The Court recently addressed an argument identical to defendant's in *State v. Frye*, 341 N.C. 470, 507-08, 461 S.E.2d 664, 683-84 (1995), *cert. denied,* —— U.S. ——, 134 L. Ed. 2d 526 (1996). In *Frye*, defendant complained that the trial court instructed the jury to find the defendant acted under a mental or emotional disturbance or an impaired capacity if it determined that the murder was the result of "paranoid disorder, mixed substance abuse disorder, mixed personality disorder, and child abuse syndrome." *Id.* at 507, 461 S.E.2d at 684. Finding that this instruction was not plain error, we said:

The court's instructions here did not preclude the jury from considering mitigating evidence. The court stated, with respect to the (f)(2) circumstance, that "it is enough that the defendant's mind or emotions were disturbed from any cause." This permitted the jury to consider any or all of defendant's psychological problems in the context of that circumstance. As to the (f)(6) circumstance, Dr. Noble never testified that any one of defendant's disorders alone resulted in impaired capacity. He did testify that defendant's history of drug abuse exacerbated his paranoia and that "intoxicants *and* psychosis [were] driving his behavior" at the time of the crime. (Emphasis added.) Thus, both instructions basically comported with defendant's evidence and were not plain error.

*Id.* at 508, 461 S.E.2d at 684.

Likewise, the trial court's instructions in this case did not preclude the jury from considering mitigating evidence. The trial court stated with respect to the (f)(2) circumstance, that "[a] defendant is under such influence if he is in any way affected or influenced by a mental or emotional disturbance at the time he kills." This allowed the jury to consider either or both of defendant's psychological problems in the context of the (f)(2) circumstance. Further, with respect to the (f)(6) circumstance, Dr. Donald Morgan, an expert in forensic psychiatry testifying for defendant, did not testify that either one of defendant's disorders alone resulted in impaired capacity. Rather, Dr. Morgan testified that defendant's capacity to appreciate the criminality of his conduct was impaired because he was suffering from both schizotypal personality disorder and crack cocaine addiction. Both of the trial court's instructions therefore comported with defendant's evidence and were not plain error. This assignment of error is overruled.

[11] By another assignment of error, defendant contends that the trial court committed plain error in denying the jury's request for a transcript of his testimony and of the testimony of defense witnesses Dr. Morgan and Dr. John Warren, an expert in forensic psychiatry and psychopharmacology. We disagree.

This Court considered virtually the same issue in *State v. Buckner*, 342 N.C. 198, 464 S.E.2d 414 (1995). In *Buckner*, the Court held that "the trial judge acted within his discretion and with the understanding that the decision as to the jury's request was fully within his discretion when he denied the jury's request to review the

testimony." *Id.* at 233, 464 S.E.2d at 434. Here, as in *Buckner*, the trial court was aware that it had discretion to produce the transcript, and the record shows that the trial court exercised its discretion when deciding not to honor the jury's request. The trial court was also aware that both doctors and defendant had testified at great length; the doctors' testimony covered over 180 pages of transcript and defendant's another 155 pages. In light of this evidence, it is clear that the trial court had decided that justice would be better served if the jury deliberations were not delayed to produce the requested transcripts. Moreover, the trial court's instruction that the jurors rely upon their individual and collective memory of the testimony is indicative of further exercise of its discretion. *See State v. Corbett*, 339 N.C. 313, 338, 451 S.E.2d 252, 265 (1994) (trial court exercised its discretion and complied with requirements of N.C.G.S. § 15A-1233(a) when it instructed jurors to rely upon their individual recollections to arrive at a verdict). This assignment of error is overruled.

**[12]** By another assignment of error, defendant contends that the trial court erred in failing to conduct a jury *voir dire* regarding extensive publicity in the local media concerning shootings of two South Carolina police officers. On 12 August 1994, during the jury's deliberations, Mecklenburg County area newspapers, television, and radio carried news stories about the shooting of two police officers in York County, South Carolina, a county adjacent to Mecklenburg County, North Carolina. In the absence of the jury, defendant specifically requested that the trial court conduct an individual *voir dire* of each juror deliberating at the capital sentencing proceeding to determine whether any of the jurors had encountered publicity about the shootings of the South Carolina officers and whether the publicity had any effect on their ongoing deliberations. Defendant maintains that his request constituted a reasonable request, especially since the shootings were covered extensively in the media. We disagree.

Issues regarding the examination of jurors are always addressed to the sound discretion of the trial court, and its decisions on these issues will not be disturbed on appeal absent an abuse of discretion. *State v. Simpson*, 341 N.C. 316, 336, 462 S.E.2d 191, 202. The trial court is in the best position to know whether or to what extent matters extraneous to the trial might affect the jury and to take proper precautions to protect the defendant's right to a fair trial. *State v. Wilson*, 322 N.C. 117, 127, 367 S.E.2d 589, 595 (1988). Because defendant has not shown that the trial court abused its discretion when it refused to conduct a *voir dire* of the jury regarding the unre-

lated shooting of the officers in South Carolina, we overrule this assignment of error.

**[13]** By another assignment of error, defendant contends that the trial court erred when defining the term "mitigating circumstance" in its instructions to the jury. When instructing the jury during the sentencing phase, the trial court defined mitigating circumstance as follows:

> A mitigating circumstance is a fact or group of facts which do not constitute a justification or excuse for a killing or reduce it to a lesser degree of crime than first degree murder, but which may be considered as extenuating or reducing the moral culpability of the killing and making it less deserving of extreme punishment than other first degree murders.

Defendant argues that the trial court's instructions defined mitigation too narrowly and limited mitigation to evidence which was extenuating or which reduced defendant's moral culpability. We disagree.

Defendant's contention has been consistently rejected by this Court. *See State v. Conaway*, 339 N.C. 487, 534, 453 S.E.2d 824, 854, *cert. denied*, —— U.S. ——, 133 L. Ed. 2d 153 (1995); *State v. Robinson*, 336 N.C. 78, 121, 443 S.E.2d 306, 327 (1994), *cert. denied*, —— U.S. ——, 130 L. Ed. 2d 650 (1995). The instruction used by the trial court in defining mitigation is identical to the one which was approved by this Court in *State v. Hutchins*, 303 N.C. 321, 279 S.E.2d 788 (1981). We see no reason to depart from our prior holding. Therefore, this assignment of error is overruled.

Defendant raises twenty-five additional issues that he concedes have been decided contrary to his position previously by this Court. He raises these issues for the purpose of permitting this Court to reexamine its prior holdings and also for the purpose of preserving them for any possible further judicial review of this case. We have carefully considered defendant's arguments on these issues and find no compelling reason to depart from our prior holdings. Therefore, we overrule these assignments of error.

**[14]** Having concluded that defendant's trial and separate capital sentencing proceeding were free of prejudicial error, we turn to the duties reserved by N.C.G.S. § 15A-2000(d)(2) exclusively for this Court in capital cases. It is our duty in this regard to ascertain (1) whether the record supports the jury's findings of the aggravating

circumstances on which the sentence of death was based; (2) whether the death sentence was entered under the influence of passion, prejudice, or other arbitrary consideration; and (3) whether the death sentence is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant. N.C.G.S. § 15A-2000(d)(2). After thoroughly examining the record, transcripts, and briefs in the present case, we conclude that the record fully supports the aggravating circumstances found by the jury. Further, we find no indication that the sentences of death in this case were imposed under the influence of passion, prejudice, or any other arbitrary consideration. We must turn then to our final statutory duty of proportionality review.

In the present case, defendant was convicted of two counts of premeditated and deliberate first-degree murder. The jury found the following aggravating circumstances as to both counts: that defendant had been previously convicted of a violent felony, N.C.G.S. § 15A-2000(e)(3); that the murder was committed for the purpose of avoiding a lawful arrest, N.C.G.S. § 15A-2000(e)(4); that the murder was committed against a law enforcement officer while engaged in the performance of his official duty, N.C.G.S. § 15A-2000(e)(8); and that the murder was committed as part of a course of conduct including other violent crimes, N.C.G.S. § 15A-2000(e)(11). The jury found as the sole statutory mitigating circumstance as to both counts that defendant was under the influence of a mental or emotional disturbance at the time of the offense, N.C.G.S. § 15A-2000(f)(2). In addition, the jury found seventeen of the twenty-five nonstatutory mitigating circumstances that were submitted as to both counts of first-degree murder.

In our proportionality review, it is proper to compare the present case with other cases in which this Court has concluded that the death penalty was disproportionate. *State v. McCollum*, 334 N.C. 208, 240, 433 S.E.2d 144, 162 (1993), *cert. denied*, —— U.S. ——, 129 L. Ed. 2d 895 (1994). We have found the death penalty disproportionate in seven cases. *State v. Benson*, 323 N.C. 318, 372 S.E.2d 517 (1988); *State v. Stokes*, 319 N.C. 1, 352 S.E.2d 653 (1987); *State v. Rogers*, 316 N.C. 203, 341 S.E.2d 713 (1986), *overruled on other grounds by State v. Vandiver*, 321 N.C. 570, 364 S.E.2d 373 (1988); *State v. Young*, 312 N.C. 669, 325 S.E.2d 181 (1985); *State v. Hill*, 311 N.C. 465, 319 S.E.2d 163; *State v. Bondurant*, 309 N.C. 674, 309 S.E.2d 170 (1983); *State v. Jackson*, 309 N.C. 26, 305 S.E.2d 703 (1983). We conclude that this case is not substantially similar to any case in

which this Court has found the death penalty disproportionate in that none of these cases involved a double murder.

Of the cases in which this Court has found the death sentence to be disproportionate, the case most similar to the present case is *State v. Hill*, 311 N.C. 465, 319 S.E.2d 163. In *Hill*, the defendant was convicted of killing a single police officer with the officer's weapon after the officer had struggled with him in an effort to arrest him. This Court vacated the sentence of death based upon the speculative nature of the evidence, specifically, the lack of evidence tending to show that defendant drew the gun from the officer's holster and the lack of evidence regarding defendant's actions prior to the encounter with the officer.

However, the present case is clearly distinguishable from *Hill* for several significant reasons. First, defendant here murdered two police officers, not just one. This Court has consistently noted that it has never found disproportionality in a case in which the defendant was convicted of killing more than one victim. *See State v. McLaughlin*, 341 N.C. 426, 462 S.E.2d 1 (1995), *cert. denied*, —— U.S. ——, 133 L. Ed. 2d 879 (1996); *State v. Garner*, 340 N.C. 573, 459 S.E.2d 718 (1995), *cert. denied*, —— U.S. ——, 133 L. Ed. 2d 872 (1996); *State v. Rose*, 339 N.C. 172, 451 S.E.2d 211 (1994), *cert. denied*, —— U.S. ——, 132 L. Ed. 2d 818 (1995); *State v. Robbins*, 319 N.C. 465, 356 S.E.2d 279, *cert. denied*, 484 U.S. 918, 98 L. Ed. 2d 226 (1987). Second, there is no doubt as to how defendant gained possession of Officer Burnette's weapon—he took it from Officer Burnette's holster for the purpose of shooting both Officer Nobles and Officer Burnette. Third, there is no doubt about what defendant had been doing prior to his encounter with the officers—he stole a van, and robbed and threatened two victims. Finally, in contrast to the jury in *Hill*, the present jury found that defendant murdered the officers to avoid arrest and that defendant had been engaged in a course of conduct which included crimes of violence against others. With respect to the issue of defendant's motive, defendant himself confessed that he murdered the unarmed Officer Burnette because after he had killed Officer Nobles, "I had to shoot him. I couldn't let him go."

The evidence in this case clearly shows that defendant deliberately murdered two police officers for the purpose of evading a lawful arrest.

The murder of a law enforcement officer *engaged in the performance of his official duties* differs in kind and not merely in

**STATE v. HARDEN**

[344 N.C. 542 (1996)]

degree from other murders. When in the performance of his duties, a law enforcement officer is the representative of the public and a symbol of the rule of law. The murder of a law enforcement officer engaged in the performance of his duties in the truest sense strikes a blow at the entire public—the body politic—and is a direct attack upon the rule of law which must prevail if our society as we know it is to survive.

*Hill*, 311 N.C. 465, 488, 319 S.E.2d 163, 177 (dissenting opinion of Mitchell, J. (now C.J.)), quoted with approval in *State v. McKoy*, 323 N.C. 1, 46-47, 372 S.E.2d 12, 37 (1988), *sentence vacated on other grounds*, 494 U.S. 433, 108 L. Ed. 2d 369 (1990). Therefore, we conclude that the present case is distinguishable from those cases in which we have found the death penalty disproportionate.

It is also proper for this Court to "compare this case with the cases in which we have found the death penalty to be proportionate." *McCollum*, 334 N.C. at 244, 433 S.E.2d at 164. Although we have repeatedly stated that we review all of the cases in the pool when engaging in this statutory duty, it is worth noting again that "we will not undertake to discuss or cite all of those cases each time we carry out that duty." *Id.* It suffices to say here that we conclude the present case is more similar to certain cases in which we have found the sentence of death proportionate than to those in which we have found the sentence disproportionate or to those in which juries have consistently returned recommendations of life imprisonment. Moreover, the jury's finding of the prior conviction of a violent felony aggravating circumstance is significant in finding a death sentence proportionate. *See, e.g., State v. Harris*, 338 N.C. 129, 449 S.E.2d 371 (1994), *cert. denied*, —— U.S. ——, 131 L. Ed. 2d 752 (1995). We note that none of the cases in which the death sentence was found to be disproportionate has included this aggravating circumstance. *See State v. Rose*, 335 N.C. 301, 439 S.E.2d 518, *cert. denied*, —— U.S. ——, 129 L. Ed. 2d 883 (1994). Accordingly, we conclude that the sentences of death recommended by the jury and ordered by the trial court in the present case are not disproportionate.

For the foregoing reasons, we hold that defendant received a fair trial, free of prejudicial error, and that the sentences of death entered in the present case must be and are left undisturbed.

NO ERROR.