STATE OF NORTH CAROLINA v. ANTHONY FERNANDO MATTHEWS

No. COA02-1690

(Filed 20 January 2004)

**1. Jury— *Batson* challenge—failure to show discriminatory intent**

The trial court did not err in a robbery with a dangerous weapon case by denying defendant's *Batson* challenges to the State's use of its peremptory challenges to excuse two female African-American jurors, because: (1) the strike of one of the jurors was based on a legitimate hunch; (2) although striking the other potential juror from the jury pool based on the fact that another attorney exercised a peremptory challenge against her in a previous unrelated case without further explanation from the challenging attorney does not articulate a legitimate reason that is reasonably specific and related to the particular case being tried, it does not rise to the level of demonstrating discriminatory intent; and (3) defendant's argument that there were other prospective jurors who gave answers similar to the two excused jurors does not provide an adequate basis for ascribing error to the trial court's finding that the State's use of its peremptory challenges was not a violation of *Batson*.

**2. Robbery— with dangerous weapon—indictment—identity of victim**

An indictment for armed robbery sufficiently identified the target of the robbery where it alleged that defendant committed the offense by threatening a store employee with a knife and taking twenty dollars worth of merchandise from the store.

Appeal by defendant from judgment entered 6 February 2002 by Judge W. Osmond Smith in Wake County Superior Court. Heard in the Court of Appeals 17 September 2003.

*Attorney General Roy Cooper, by Assistant Attorney General Tammera S. Hill and Special Deputy Attorney General T. Lane Mallonee, for the State.*

*Irving Joyner, attorney for defendant.*

STATE v. MATTHEWS

[162 N.C. App. 339 (2004)]

TIMMONS-GOODSON, Judge.

Anthony Fernando Matthews ("defendant") appeals his conviction for robbery with a dangerous weapon. For the reasons stated herein, we find no error in the trial court's judgment.

The pertinent procedural history of this case is as follows: During jury selection at trial, the State peremptorily challenged prospective jurors Sandra Haney ("Haney") and Raecheal Weaver ("Weaver"). The defense counsel objected to their removal, noting that defendant, Haney and Weaver were all African-Americans and contended that the challenges were racially motivated. Defense counsel argued that "[n]othing stuck out as anything that would give rise to a reason to excuse them, therefore we're left with something that's [sic] on its face would deprive [defendant] of having two to three members on the panel that are African-American." The State responded stating that because there remained one African-American prospective juror, "I don't think I should have to answer to that." Based on the exchange, the trial court denied defendant's objection, asserting that defendant failed to make a *prima facie* showing of discrimination. The court reserved the right to revisit the issue pending further jury selection.

After the State chose twelve jurors, eleven of whom were Caucasian and one of whom was African-American, the court *sua sponte* reconsidered the State's use of its peremptory challenges and ruled "that without a showing of any intention or a showing of any discrimination . . . there is a *prima facie* basis shown by the defendant in his allegations of discrimination based on [*Batson v. Kentucky*, 476 U.S. 79 (1986)] and that 100 percent of the State's challenge [sic] were directed to black females and leaving only one black female on the jury." The court then gave the State the opportunity to "rebut the *prima facie* showing and present any reason . . . to show that the peremptory challenges were not motivated by racial [sic] discriminatory or unconstitutional purposes."

The State offered that Weaver was challenged because when asked if she ever sat on a jury, she stated that she was once excused from a jury during voir dire and therefore he decided to excuse her from this case "for the reason that some other lawyer at another point in time . . . exercised a peremptory challenge as far as she goes." As for Haney, the State challenged her because she lived in the vicinity of the crime at issue in the case but was not familiar with the particular store that was robbed. In his response to the State's explanation,

defense counsel pointed out that there were other potential jurors who stated that they were previously called for jury duty but were not chosen, and that the State did not challenge them. The defendant also noted that Haney was the only prospective juror who the State chose to focus on her residential proximity to the crime. The trial court ultimately overruled defendant's objection, having determined that the State "expressed valid, articulable reasons for the exercise of peremptory challenges not based on race." It is from this ruling that defendant appeals.

The issues presented on appeal are whether (I) the trial court erred by denying defendant's *Batson* challenges; and (II) the robbery with a dangerous weapon indictment was fatally defective.

**[1]** For issues arising under *Batson v. Kentucky*, 476 U.S. 79 (1986), *modified, Powers v. Ohio*, 499 U.S. 400 (1991), trial courts must apply a three-step test to determine whether the State's peremptory challenges of prospective jurors are purposefully discriminatory. First, the defendant must successfully establish a *prima facie* case of purposeful discrimination. *Batson*, 476 U.S. at 96. If the *prima facie* case is not established, then the peremptory challenges will stand. If the *prima facie* case is established, however, the burden shifts to the prosecutor to offer a race-neutral explanation for each peremptory challenge at issue. *Id.* at 97. If the prosecutor fails to rebut the *prima facie* case of racial discrimination with race-neutral explanations, then the peremptory challenges are not allowed. If the prosecutor does rebut the *prima facie* case with race-neutral explanations, the defendant has a right of surrebuttal to show that the prosecutor's explanations were merely pretextual. *State v. Peterson*, 344 N.C. 172, 176, 472 S.E.2d 730, 732 (1996), *citing State v. Spruill*, 338 N.C. 612, 631, 452 S.E.2d 279, 288 (1994), *cert. denied* 516 U.S. 834 (1995). If the trial court finds that the race-neutral reasons are not pretextual, the peremptory challenges are allowed. If the trial court finds, however, that the race-neutral explanations are pretextual, it follows that the peremptory challenges at issue are purposefully discriminatory; they are therefore not allowed.

The trial court's determination is given deference on review because it is based primarily on first-hand credibility evaluations. *State v. Golphin*, 352 N.C. 364, 427, 533 S.E.2d 168, 211 (2000). "Appellate courts must uphold the trial court's findings of fact unless they are 'clearly erroneous.' " *State v. Cofield*, 129 N.C. App. 268, 275-76, 498 S.E.2d 823, 829 (1998), *quoting State v. Barnes*, 345 N.C.

184, 210, 481 S.E.2d 44, 48 (1997). We cannot find clear error in the fact-finder's decision where the fact-finder chooses one of two permissible views of the evidence. *Id., citing Hernandez v. New York*, 500 U.S. 352, 369 (1991). "This standard allows for reversal only when a 'reviewing court on the entire evidence [is] left with the definite and firm conviction that a mistake has been committed.' " *Id.*

In the present case, the fact that the State only used its peremptory challenges to strike African-American jurors was deemed sufficient by the trial court to establish a *prima facie* case of discrimination. "A *prima facie case* 'need only show that the relevant circumstances raise an inference that [counsel] used peremptory challenges to remove potential jurors solely because of their race.' " *Colfield*, 129 N.C. App. at 276, 498 S.E.2d at 829, *citing State v. Quick*, 341 N.C. 141, 144, 462 S.E.2d 186, 188 (1995). Relevant circumstances include repeated use of peremptory challenges against prospective jurors of a particular race such that it tends to establish a pattern of strikes, and the attorney's acceptance rate of potential jurors of this race. *Id.* The State is allowed six peremptory challenges per defendant in a criminal case. N.C. Gen. Stat. § 15A-1217 (2003). In the case at bar, the State chose to exercise two of its six peremptory challenges, and both against African-American jurors.

In response to the court's ruling, the State argued that Weaver was challenged because she was removed from a jury pool in a previous case. The State asserted that Haney was challenged because her statement that she lived in the neighborhood where the robbery occurred but did not know of the particular store that was robbed raised concerns about her level of awareness. In *Colfield*, this Court held that the challenging attorney's

> explanations need not 'rise to the level justifying a challenge for cause,' and need not be 'persuasive, or even plausible.' *Barnes*, 345 N.C. at 209, 481 S.E.2d at 57. In fact, the challenges may be based on [the challenging attorney's] 'legitimate hunches and past experience.' *Id.* [Counsel] must, however, articulate 'legitimate race-neutral reasons that are clear, reasonably specific, and related to the particular case to be tried.' *State v. Peterson*, 344 N.C. 172, 176, 472 S.E.2d 730, 732 (1996). 'Unless a discriminatory intent is inherent in [the challenging attorney's] explanation, the reason offered will be deemed race neutral at this secondary stage of the inquiry.' *Hernandez*, 500 U.S. at 360.

*Colfield*, 129 N.C. App. at 277, 498 S.E.2d at 830.

We hold that while the State's challenge against Haney may have been based on a legitimate hunch, the basis for the challenge against Weaver is not sufficiently related to the case at bar. In our opinion, striking a potential juror from a jury pool because another attorney exercised a peremptory challenge against her in a previous unrelated case without further explanation from the challenging attorney in the present case does not articulate a legitimate reason that is reasonably specific and related to the particular case to be tried. Arbitrary as this explanation is, however, under our existing case law we are compelled to hold that it does not rise to the level of demonstrating discriminatory intent. *See e.g. State v. Harden*, 344 N.C. 542, 558, 476 S.E.2d 658, 666 (1996) (Concluding no discriminatory intent where the State excused a potential juror because she was "young and immature").

After the State offers its race-neutral explanation, the trial court must consider that explanation as well as the defendant's surrebuttal to the State's argument to determine whether the State's explanation is pretextual. *Colfield*, 129 N.C. App. at 279, 498 S.E.2d at 831. This Court held in *Colfield* that "even if answers of a prospective juror of one race who is later peremptorily excused are similar to those of a juror of another race who is not challenged, 'this state of circumstances in itself does not necessarily lead to a conclusion that the reasons given by [the challenging attorney] were pretextual.' " *Id.*, *quoting Barnes*, 345 N.C. at 212, 481 S.E.2d at 59. Thus, defendant's argument that there were other prospective jurors who gave answers similar to Haney and Weaver does not provide an adequate basis for ascribing error to the trial court's finding that the State's use of its peremptory challenges was not in violation of *Batson*. Because we are unable to conclude that there is clear error in the trial court's decision, we overrule this assignment of error.

**[2]** Defendant next argues that the State's indictment was fatally defective in that it fails to properly identify the target of the robbery. We disagree.

North Carolina General Statute §15A-924(a)(5) (2003) requires that an indictment describe the crime charged "with sufficient precision to apprise the defendant . . . of the conduct which is the subject of the accusation." "[T]he purpose of an indictment is to identify clearly the crime being charged, thereby putting the accused on reasonable notice to defend against it and prepare for trial." *State v. Thrift*, 78 N.C. App. 199, 201, 336 S.E.2d 861, 862 (1985).

The person in the store at the time of the robbery was an employee and not the owner of the store. The indictment in pertinent part reads as follows:

> . . . the defendant . . . unlawfully, willfully, and feloniously did steal, take and carry away and attempt to steal, take and carry away another's personal property, to wit: two twelve packs of Bud Light beer, having an approximate value of twenty dollars ($20), from the person, presence and place of business of Zaka Ullah. The defendant committed this act by means of assault having in his possession and with the use and threatened use of a knife, a dangerous weapon whereby the life of Zaka Ullah was endangered and threatened.

Although the relationship of the robbery victim to the store that was robbed raises a question of fact, it does not raise any doubt as to the crime being charged, nor does it hinder defendant's ability to prepare his defense. The indictment alleges that defendant committed the offense by threatening Ullah with a knife and taking twenty dollars worth of merchandise from the store. The evidence tendered by the state was consistent with the allegations contained in the indictment. This assignment of error is overruled.

No error.

Judges HUDSON and ELMORE concur.