STATE OF NORTH CAROLINA v. BENJAMIN EDWARD PETERSON

No. 246A95

(Filed 31 July 1996)

**1. Jury § 257 (NCI4th)— capital murder—jury selection— State's peremptory challenge of black juror—criminal record**

There was no error in a capital prosecution for first-degree murder where the State used a peremptory challenge to excuse a black juror and defendant asserted that the challenge was exercised solely on the basis of race, but the State explained without prompting that the prospective juror had been convicted on six occasions of issuing worthless checks and was not forthright about her convictions upon questioning, and expressed concern

about her health because she had suffered a heart attack and was on medication. Although defendant argued that the State's explanations were pretextual because the State questioned only two jurors about their criminal histories, did not excuse a white juror convicted of driving while impaired, and no criminal record check was ever produced in court, disparate treatment of similarly situated jurors is not dispositive of discriminatory intent and the law does not demand that the State's explanation be persuasive or plausible. The State faces the burden of articulating legitimate race-neutral reasons that are clear, reasonably specific, and related to the particular case to be tried; in this case, the offenses indicated a lack of trustworthiness and the prospective juror did not respond to the State's questions candidly. Also, the State may use a prospective juror's criminal record as a justification for a challenge even when the prospective juror is not questioned about it; absent evidence to the contrary, it is not unreasonable for the trial court to assume that the prosecutor is telling the truth with regard to the criminal records of prospective jurors.

**Am Jur 2d, Jury §§ 235, 244.**

**Use of peremptory challenge to exclude from jury persons belonging to a class or race. 79 ALR3d 14.**

2. **Jury § 248 (NCI4th)— capital murder—jury selection— State's use of peremptory challenge to excuse black juror—no findings or conclusions**

The trial court did not err in a capital prosecution for first-degree murder by excusing a prospective juror on a peremptory challenge by the State after a *Batson* challenge by defendant without making any findings of fact or conclusions of law and without giving the defendant an opportunity for surrebuttal. When there is no material conflict in the evidence, no findings of fact are necessary and the court's response indicated that it accepted the State's proffered reasons as sufficient evidence that the State acted without discriminatory intent. Furthermore, there is no indication that the defendant was precluded from putting on additional evidence to show that the State's explanations were pretextual.

**Am Jur 2d, Jury §§ 235, 244.**

**Use of peremptory challenge to exclude from jury persons belonging to a class or race. 79 ALR3d 14.**

**3. Evidence and Witnesses § 1323 (NCI4th)— capital murder—motion to suppress statement—no findings on invocation of right to counsel and subsequent waiver**

A motion to suppress a first-degree murder defendant's statement to officers was remanded for findings of fact where defendant testified that he asked for an attorney and his mother at a 21 September 1992 interview; he told the officers at an interrogation on 4 November 1992 that he did not want to talk to them; they said that if he did not talk to them, his mother would be charged with a crime; and defendant made a statement. Although the trial court concluded that the defendant voluntarily, knowingly, and intelligently waived his rights, the court failed to make any findings of fact concerning whether the defendant had invoked his Fifth Amendment rights at the 21 September 1992 interrogation and whether any subsequent waiver was voluntary. If the defendant had invoked his right to counsel, the detectives would not have been permitted to reinitiate conversation with him without his attorney present.

**Am Jur 2d, Evidence § 713.**

**4. Constitutional Law § 276 (NCI4th)— capital murder—right to counsel—attorney's demand to be present during questioning**

A first-degree murder defendant's Fifth Amendment right to counsel was not invoked when his attorney demanded that he be present during any interrogation of the defendant and no finding of fact on this issue was necessary. A defendant's right to counsel is personal to him and he may waive this right even though his attorney has instructed the investigating officers not to talk to him. In light of the court's findings that support the conclusion that defendant's waiver of his rights was voluntarily, knowingly, and intelligently made, the statement would not have been inadmissible if the court had found that the attorney had advised officers not to talk to defendant.

**Am Jur 2d, Criminal Law §§ 732-738.**

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of life imprisonment entered by Llewellyn, J., at the 7 November 1994 Criminal Session of Superior Court, New Hanover County, upon a verdict of guilty of first-degree murder in a case tried capitally to a jury. Heard in the Supreme Court 9 April 1996.

**STATE v. PETERSON**

[344 N.C. 172 (1996)]

The defendant was tried for the first-degree murder of Charles Oakley. The evidence showed that on 19 September 1992, customers of Allen's Sports Supply found Mr. Oakley, its owner and manager, incoherent and bleeding from the head. The front panel of the cash register had been torn off, and the drawer had been pried open. A latent fingerprint matching the defendant's was found on a piece of plastic that had been broken from the register.

The victim remained hospitalized until he was taken off of life support and died on 7 October 1992. The victim died as the result of a subdural hematoma due to blunt trauma to the head.

On 4 November 1992, Detective Bryan Pettus and Detective Jeff Allsbrook interviewed the defendant, who was in custody for unrelated charges. The defendant was advised of his *Miranda* rights and waived them. He then gave three conflicting statements. He first stated that he had been in the store on 20 September 1992 to buy fishhooks, but had not been there the day before. When the detectives told him that the store was closed that day and that his fingerprint had been found in the store, he recanted and stated that two of his friends took him to the store, where they found the victim bleeding on the floor. They then took the money and left. Upon further questioning by the detectives, the defendant again changed his story and stated that on the day of the robbery, he had been smoking crack with an individual named Corky. He said that he and Corky went to the victim's store, where they saw the victim proceed to open his business. Corky said he wanted to rob the place, and the defendant protested. Corky then went into the store with a pipe. A few minutes later, the defendant found the victim lying on the floor bleeding. The defendant stated that he took fifty-two dollars from the register.

After a pretrial hearing and *voir dire* at trial, the trial court denied the defendant's motion to suppress his statement. The defendant was convicted of first-degree murder based on the felony murder rule. The jury recommended a sentence of life in prison, which was imposed. The defendant appealed.

*Michael F. Easley, Attorney General, by Hal F. Askins, Special Deputy Attorney General, and Sondra C. Panico, Associate Attorney General, for the State.*

*Nora Henry Hargrove for the defendant-appellant.*

STATE v. PETERSON

[344 N.C. 172 (1996)]

WEBB, Justice.

[1] The defendant first assigns error to the State's use of a peremptory challenge to excuse a black prospective juror. He asserts that the State impermissibly exercised the challenge solely on the basis of the prospective juror's race. The defendant contends that the prosecutor's proffered reasons for the challenge were pretextual and that the trial court abused its discretion in failing to hold a hearing on the objection and failing to allow the defendant an opportunity for surrebuttal. He says this violated his state and federal constitutional rights. N.C. Const. art. I, § 26; *Batson v. Kentucky*, 476 U.S. 79, 90 L. Ed. 2d 69 (1986).

The defendant in this case is black, the victim was white, and the excused prospective juror, Emma Parker, is a black female. After questioning Ms. Parker, the State exercised one of its peremptory challenges to excuse her. The State explained without prompting that she had been convicted on six occasions of issuing worthless checks and was not forthright about her convictions upon questioning. The State also expressed concern about Ms. Parker's health; she had suffered a heart attack and was on medication. The defendant then made an objection based on *Batson v. Kentucky*, 476 U.S. 79, 90 L. Ed. 2d 69. The trial court responded "Okay" and excused Ms. Parker.

In *Batson*, the United States Supreme Court held that the Equal Protection Clause of the Fourteenth Amendment prohibits the State from peremptorily challenging jurors solely on the basis of race. *Batson*, 476 U.S. at 89, 90 L. Ed. 2d at 83. In the first step of the three-part analysis articulated by the Court, the defendant must make out a *prima facie* case of racial discrimination by the prosecutor in the exercise of peremptory challenges. *Id.* at 96-97, 90 L. Ed. 2d at 87-88. When the State voluntarily proffers explanations for a peremptory challenge, as in this case, the reviewing court need not determine whether the defendant has met his initial burden and may proceed as if the *prima facie* case has been established. *State v. Robinson*, 330 N.C. 1, 17, 409 S.E.2d 288, 297 (1991). The State faces the burden of articulating legitimate race-neutral reasons that are clear, reasonably specific, and related to the particular case to be tried. *Id.* The law does not demand that the explanation be persuasive or even plausible. *Purkett v. Elem*, —— U.S. ——, ——, 131 L. Ed. 2d 834, 839 (1995). The defendant then has a right of surrebuttal to show that the explanations are pretextual. *State v. Spruill*, 338 N.C. 612, 631, 452 S.E.2d 279, 288 (1994), *cert. denied*, —— U.S. ——, 133 L. Ed. 2d 63 (1995).

STATE v. PETERSON

[344 N.C. 172 (1996)]

The defendant in this case argues that the State's explanations were pretextual because the State questioned only two jurors about their criminal histories and did not excuse a white prospective juror who had been convicted of driving while impaired. The defendant notes that no criminal record check was ever produced in court. We have held that disparate treatment of similarly situated potential jurors is not dispositive of discriminatory intent. *State v. Porter*, 326 N.C. 489, 501, 391 S.E.2d 144, 152-53 (1990). In this case, Ms. Parker's offenses indicated a lack of trustworthiness, and she did not respond to the State's questions candidly; the juror convicted of driving while impaired volunteered the information to the court. We have also held that the State may use a prospective juror's criminal record as a justification for challenging her even when the prospective juror was not questioned about it. *State v. Kandies*, 342 N.C. 419, 436, 467 S.E.2d 67, 76 (1996). "Absent evidence to the contrary, it is not unreasonable for the trial court to assume that the prosecutor is telling the truth with regard to the criminal records of prospective jurors." *Id.* at 438, 467 S.E.2d at 77. For the foregoing reasons, we cannot say the superior court was in error for holding that the prosecutor's reasons for challenging the prospective juror were not pretextual.

**[2]** The defendant also contends that the court abused its discretion by excusing Ms. Parker without making any findings of fact or conclusions of law and without giving the defendant an opportunity for surrebuttal. When the defendant objected, the court merely stated "Okay" and excused the juror. We note that when there is no material conflict in the evidence, no findings of fact are necessary. *State v. Porter*, 326 N.C. at 502, 391 S.E.2d at 153. The court's response indicated that it accepted the State's proffered reasons as sufficient evidence that the State acted without discriminatory intent. The court's ruling is evidenced by the removal of the juror. Furthermore, there is no indication that the defendant was precluded from putting on additional evidence to show that the State's explanations were pretextual. The defendant has failed to show that the action of the trial court in allowing the prosecutor's peremptory challenge of Ms. Parker was erroneous. *See State v. Rouse*, 339 N.C. 59, 78, 451 S.E.2d 543, 553 (1994), *cert. denied*, —— U.S. ——, 133 L. Ed. 2d 60 (1995)..

This assignment of error is overruled.

**[3]** The defendant next assigns error to the denial of his motion to suppress a statement he made to law enforcement officers on 4 November 1992. A *voir dire* was held on the defendant's motion out of the presence of the jury.

Richard G. Miller, an attorney practicing in New Hanover County, testified that in September 1992 he was appointed to represent the defendant, who was in jail on a charge of rape, which was not related to the charge in this case. He testified that the standard procedure he follows in all serious cases, and he was sure he did it in this case, was to advise the defendant not to speak to anyone unless he, Mr. Miller, was present. He also informed the jailer not to let the defendant be interviewed by anyone unless the attorney was informed prior to the interview.

Officers of the City of Wilmington Police Department testified that they interviewed the defendant on the rape charge on 21 September 1992 and that he did not request an attorney at this time. They interviewed him again on 4 November 1992 in regard to the murder involved in this case. They testified that they fully advised him of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694 (1966), and that he waived them. The officers testified that the defendant made an inculpatory statement and then requested an attorney. They ceased the interview at that time.

The defendant testified that he asked for an attorney and his mother at the 21 September 1992 interview. He testified that at the interrogation on 4 November 1992, he told the officers he did not want to talk to them. They said that if he did not talk to them, his mother would be charged with a crime. At that time, he made a statement. Although the trial court concluded that the defendant voluntarily, knowingly, and intelligently waived his rights, the court failed to make any findings of fact concerning whether the defendant had invoked his Fifth Amendment rights at the 21 September 1992 interrogation and whether any subsequent waiver was voluntary. If the defendant had invoked his right to counsel, the detectives would not have been permitted to reinitiate conversation with him about the rape or any other crime without his attorney present. *Arizona v. Roberson*, 486 U.S. 675, 683-84, 100 L. Ed. 2d 704, 715 (1988); *State v. Pope*, 333 N.C. 106, 112, 423 S.E.2d 740, 743-44 (1992). Because we cannot say that admission of the statements was harmless beyond a reasonable doubt, we remand to the trial court for findings of fact that would resolve the conflict in the evidence regarding whether the defendant invoked his rights at the earlier interrogation. *See State v. Booker*, 306 N.C. 302, 312-13, 293 S.E.2d 78, 84 (1982).

[4] The defendant also says that his Fifth Amendment right to counsel was invoked when his attorney, Mr. Miller, demanded that he be

present during any interrogation of the defendant and that the court did not make findings of fact sufficient to resolve this issue. We have held that a defendant's right to counsel is personal to him. He may waive this right although his attorney has instructed the investigating officers not to talk to him. *State v. Reese*, 319 N.C. 110, 135, 353 S.E.2d 352, 366 (1987). Even if the court had found as a fact that Mr. Miller had advised the officers not to talk to the defendant, it would not have made his statement inadmissible in light of the court's findings that supported the conclusion that the defendant's waiver of his rights was voluntarily, knowingly, and intelligently made. The defendant could waive his rights in spite of his attorney's advice to the contrary. No finding of fact on this feature of the case was necessary. *See Moran v. Burbine*, 475 U.S. 412, 89 L. Ed. 2d 410 (1986).

NO ERROR IN PART; REMANDED IN PART.