STATE OF NORTH CAROLINA v. DEMETRIUS ANTOINE COFIELD

No. COA97-609

(Filed 21 April 1998)

**1. Jury § 248 (NCI4th)— peremptory challenges—*Batson* decision—applicability to defendants**

The decision of *Batson v. Kentucky*, 476 U.S. 79, has been expanded to prohibit not only the State, but also criminal defendants, from engaging in purposeful racial discrimination in the exercise of peremptory challenges.

**2. Jury § 257 (NCI4th)— peremptory challenges—racial discrimination—prima facie showing**

The State made a *prima facie* showing of racial discrimination in a black defendant's peremptory challenges in a capital trial where the jury consisted of six black and six white jurors just prior to defense counsel's exercise of defendant's peremptory challenges; defense counsel peremptorily challenged no black jurors at this point but did peremptorily challenge four white jurors, two-thirds of the white jurors then available; and the State noted other relevant circumstances, including the facts that black jurors remaining on the panel "paralleled" the challenged white jurors, that the challenged jurors had indicated that they could consider both life imprisonment and the death penalty, and that none had demonstrated any partiality.

**3. Jury § 260 (NCI4th)— peremptory challenges—racial discrimination—explanations—rebuttal of prima facie case**

A black defendant's explanations for peremptorily challenging four white jurors in this capital trial successfully rebutted the State's *prima facie* case of racial discrimination where defendant explained that the first juror was challenged because she knew one of the State's expert witnesses, her sister was a victim of a recent breaking and entering, and her uncle worked in the same police department as officers involved in this case; the second juror was challenged because he had served in the military, appeared to have some difficulty with race, was a member of the VFW, and counsel was concerned about some of his facial expressions when questioned about a family member who had previously been raped; the third juror was challenged because he had served in the military, was a member of a gun club, and appeared

to have some difficulty with race; and the fourth juror was challenged because counsel thought he had been deceptive and he would not look counsel "in the eye."

**4. Jury § 260 (NCI4th)— peremptory challenges—pretextual race-neutral explanations—racial discrimination**

The trial court did not err by finding that a black defendant's facially race-neutral explanations for peremptorily challenging three white jurors were pretextual so that the State established purposeful discrimination where the first juror was a "little girl" when her uncle retired from the same police department involved in this case, the second juror was not obnoxious to defense counsel as counsel claimed but was merely irritated because counsel repeatedly asked him the same questions, and the rape of the third juror's family member, which concerned defense counsel, had occurred nine to ten years prior to this trial.

**5. Homicide § 275 (NCI4th)— felony murder—attempted armed robbery—sufficiency of evidence**

The State's evidence was sufficient to support defendant's conviction for first-degree murder in the perpetration of attempted armed robbery where it tended to show that defendant signed a statement in which he admitted that he carried a gun into a store, he had a hood pulled down to just above his eyes and a bandanna over the bottom of his face, he pointed a gun at the cashier and told him to "give me your loot," and when the cashier laughed, he fired a gun and ran from the store; a witness saw defendant enter the store with a gun and heard a gunshot while defendant was inside the store; and the cashier's body was found near the cash register.

**6. Homicide § 553 (NCI4th)— first-degree murder—denial of guilt—second-degree instruction not required**

A first-degree murder defendant's denial at trial that he shot the victim did not require the trial court to instruct the jury on the lesser included offense of second-degree murder.

Appeal by defendant from judgment dated 11 October 1996 by Judge Franklin R. Brown in Edgecombe County Superior Court. Heard in the Court of Appeals 24 February 1998.

STATE v. COFIELD

[129 N.C. App. 268 (1998)]

*Attorney General Michael F. Easley, by Special Deputy Attorney General Francis W. Crawley, for the State.*

*Fountain and Goodwyn, by George A. Goodwyn, and Gibbons, Cozart, Jones, Hughes, Sallenger & Taylor, by Thomas R. Sallenger, for defendant appellant.*

GREENE, Judge.

Demetrius Antoine Cofield (Defendant) appeals his conviction for the first-degree murder of Mohammed Suleiman Mullah (Mullah) in the perpetration of attempted armed robbery.

During jury selection, defense counsel peremptorily challenged prospective jurors Anita Cooke (Cooke), James Russ (Russ), Milton Moore, Jr. (Moore), and Michael Speight (Speight) on behalf of Defendant, who is African-American. The State objected to their removal, contending that the challenges at issue were racially motivated, and noted that "each of these four jurors . . . are Caucasian, [and] have given no . . . answers that the State would feel would entitle [defense] counsel to remove them . . . ."

The State specifically noted that Cooke had indicated that she would consider both the death penalty and life imprisonment, and had stated there was no reason she could not be fair. The State also noted that one of the accepted African-American jurors "has almost the identical credentials [as Cooke, and these jurors] parallel each other consistently and entirely." As for Russ, the State contended that "he's heard about the incident, just like Number Two, who is black, yet the defendant is willing to let Number Two sit up there, when both Number Two and [Russ] have almost identical credentials." As for Moore, "he has been on a jury, just as Number Two, who is black, has been on a jury. He has said he could consider both punishments. He has given no reason . . . that the State has heard that would show that he is impartial to [Defendant] in any way." As for Speight, the State contended that he "has indicated that he could consider both [life and death] punishments. He has given no indication that the State has seen that he would be impartial, or unfair to this [Defendant] in any way."

The Court found the following facts:

The Jury passed to [Defendant] consisted of four black males, two white males, two black females and four white females. . . . The challenged jurors were all white . . . . [T]he Court listened to

the juror voir dire, which is of record, and examined juror questionnaires of the jurors passed by the State to [Defendant]; . . . that the Court adopts the objections of the State and the questions and answers of the jurors on voir dire and the information contained in the questionnaire as its findings of fact.

The trial court found that the State had made out a *prima facie* case of racially motivated peremptory challenges.

Defense counsel then attempted to rebut the State's *prima facie* case with race-neutral explanations for the challenges. As for Cooke, defense counsel stated that she was formerly employed by Nash General Hospital. "She, by her own admission and own statement, indicated that she was familiar with Doctor Levy. Doctor Levy [who performed the autopsy on Mullah] is a very important witness in this case for the State . . . ." Defense counsel also noted that Cooke's sister-in-law was a victim of a recent breaking and entering, and that her uncle had worked with the Rocky Mount Police Department, as did the officers involved in Defendant's case. Defense counsel explained that Russ was challenged because "when asked as to his race, he calls himself Caucasian [rather than white]," and this indicated to defense counsel "that, perhaps, this gentleman has, in his own mind, some difficulty with races." In addition, Russ had requested, and the trial court had denied, excusal from jury duty for health reasons. Furthermore, defense counsel noted that Russ had served as a pilot in the military, and "we do not need to have individuals with the propensities of a prior military record serving on a jury in this case . . . base[d] . . . on the experience of counsel, both personally and also in general." Russ also "is a member of the VFW, nothing finer than the VFW, but in this case we do not believe that a member of VFW should be sitting as a member in this case, on the jury panel." Finally, defense counsel stated that Russ had been challenged in part due to the fact that his facial expressions appeared to reveal some concern on his part that a family member had been raped in the past. As for Moore, defense counsel stated that he had a "dominat[ing]" attitude when he answered questions. Moore described his race as "Anglo-Saxon" on the jury questionnaire, and defense counsel felt that this might mean that "race causes [Moore] some difficulty." Moore also had a military background, and "is a member of the Rainbow Gun Club." As for Speight, defense counsel felt he "very clearly was . . . telling a lie to the Court, when the Court was asking him questions concerning how he knew [one of the witnesses], and why he didn't bring that to the Court's attention before." In addition,

defense counsel "just did not like [Speight], did not like his attitude. He did not look us in the eye, he didn't look up. We thought he was being deceptive, being untruthful."

The State did not immediately offer any additional argument as to the four challenged jurors. The trial court removed Speight pursuant to defense counsel's peremptory challenge, but sustained the State's objections to the removal of the other three prospective jurors challenged. After additional questioning of the prospective jurors, defense counsel again peremptorily challenged Cooke, Russ, and Moore, offering the following additional reasons:

Moore refuses to answer the questions asked and posed upon him by counsel. His answer to any questions were over and over that he didn't remember. His attitude as displayed in the courtroom was not only obnoxious, but was rude. . . .

In addition, [Moore] was mimicking what the Court was saying to counsel earlier about, "That's already been asked. You've already asked that" . . . on at least two occasions. [Moore] . . . was the foreperson on a previous jury. . . .

[Russ did not complete his answers, and] has a family member who has suffered from a rape in the past. . . .

[Cooke] was familiar [with] and . . . knew Dr. Levy, [an expert witness for the State]. . . . [S]he only saw him once or so, or twice or so. Nevertheless, she . . . has a family member, who was a sister-in-law that was involved in a breaking and entering, and . . . she has a retired uncle from the [police department involved in this case].

The trial court, after hearing defense counsel's explanations for use of the Defendant's peremptory challenges, found "that [defense counsel] failed to advance race-neutral reasons for the peremptory challenges at issue," and "had failed to rebut the prima facie case of purposeful racial discrimination."

Although the trial court determined that defense counsel's explanations were not facially race neutral, it nonetheless allowed the State to offer surrebuttal arguments that defense counsel's explanations were merely pretextual excuses for purposeful racial discrimination. The State noted:

[Cooke's] relative, her uncle, she said . . . that she was "a little girl" when he retired [from the police department]. . . . She does not [currently] know anybody with [that police department]. . . .

As to [Moore], Your Honor, if there had been any "obnoxious" attitude elicited, it's been, the State would contend, because [Moore] has been asked the same question, with all respect to counsel, at least three or four times, and each time, including the first time, he gave an articulate, intelligent answer, which the State could understand what he was saying the first time. We would say he probably feels his answer was articulate and intelligent the first time, and if he gets obnoxious [it's] because he's asked the same thing four times.

[Russ] said [the] "rape [of a family member] occurred nine to ten years ago [and] was resolved to his satisfaction" . . . [and] he concluded . . . by saying he could consider life imprisonment.

The trial court noted that:

[It had] followed the voir dire examination closely, observed the demeanor of the jurors in question, and the attorneys, observed the expressions of the jurors and their reactions to the questions asked and listened to the tone of their voices and their answers to the questions propounded; and that the Court read nothing in the questionnaires that was not later explained, heard no answer and noticed nothing in the demeanor of the three jurors or the manner in which they answered that would disqualify them from serving impartially.

The trial court then found "that the reason advanced by [defense counsel] for exercising the challenges was vague and merely a pretext and purposely racially discriminatory." The jury which ultimately heard Defendant's case was composed of seven African-American jurors and five Caucasian jurors, and included Cooke, Russ, and Moore.

Undisputed evidence revealed that on the afternoon of 6 November 1995, Mullah, the cashier of Branch Street Grocery (the Store) in Rocky Mount, North Carolina, received a fatal gunshot wound. Defendant, who was then a seventeen-year-old high school student, gave the following statement (Statement) to the police that same evening:

I told Jimmy to give me the burner, gun. Jimmy gave me the gun. I told them I was going to the [Store]. I was wearing a blue

raincoat with the hood pulled down to just above my eyes, and a bandanna over the bottom of my face to my nose.

I went inside the [Store] and Jimmy stayed out front. Inside [I] pointed the 9-millimeter at [Mullah] and said, "Yo, give me your loot; give me your loot."

[Mullah] just laughed at me. I told him again to give me the loot. He kept laughing and reached under the counter. I fired the gun and ran out.

An officer wrote out this Statement as Defendant gave it, and Defendant signed it. Defendant made a motion to suppress this Statement, which the trial court denied. The trial court, after concluding that "Defendant purposely, freely, knowingly, and voluntarily waived each of his rights and made a [Statement]," admitted it into evidence over Defendant's objection at trial.

At trial, Rodney Massenburg (Massenburg) testified that he saw Defendant with a gun, and then saw Defendant go into the Store alone. Massenburg heard one gunshot while Defendant was in the Store, then saw Defendant exit the Store and place the gun in his pants. When Massenburg went inside the Store to investigate, Mullah was fatally wounded and lying on the floor behind the counter where the cash register was located.

Defendant testified in court that he was not in the Store when Mullah was shot, and that he did not attempt to rob the Store.

Defendant made a motion to dismiss the charges against him, and in the alternative, requested jury instructions on the lesser-included offense of second-degree murder. The trial court denied both requests. The jury found Defendant guilty of attempted robbery with a firearm and of first-degree murder in the perpetration of a felony. Defendant was sentenced to life imprisonment without parole.

The issues are whether: (I) Defendant's peremptory challenges against three jurors were racially motivated; (II) there was substantial evidence that Defendant was guilty of first-degree murder committed in the perpetration of attempted robbery with a firearm; and (III) the evidence supported submission of second-degree murder.

I

In *Batson v. Kentucky*, 476 U.S. 79, 90 L. Ed. 2d 69 (1986), *modified, Powers v. Ohio*, 499 U.S. 400, 113 L. Ed. 2d 411 (1991), the United States Supreme Court established a three-step test to deter-

mine whether the State's peremptory challenges of prospective jurors are purposefully discriminatory. Under *Batson*, the defendant must first successfully establish a *prima facie* case of purposeful discrimination. *Batson*, 476 U.S. at 96, 90 L. Ed. 2d at 87-88. If the *prima facie* case is not established, it follows that the peremptory challenges are allowed. If the *prima facie* case is established, however, the burden shifts to the prosecutor to offer a race-neutral explanation for each peremptory challenge at issue. *Id.* at 97, 90 L. Ed. 2d at 88. If the prosecutor fails to rebut the *prima facie* case of racial discrimination with race-neutral explanations, it follows that the peremptory challenges are not allowed. If the prosecutor does rebut the *prima facie* case with race-neutral explanations, the defendant has a right of surrebuttal to show that the prosecutor's explanations were merely pretextual. *State v. Peterson*, 344 N.C. 172, 176, 472 S.E.2d 730, 732 (1996); *State v. Green*, 324 N.C. 238, 240, 376 S.E.2d 727, 728 (1989). If the trial court finds that the race-neutral reasons are not pretextual, the peremptory challenges are allowed. If the trial court finds, however, that the race-neutral explanations are pretextual, it follows that the peremptory challenges at issue are purposefully discriminatory; they are therefore not allowed.

**[1]** *Batson* has been expanded to prohibit not only the State, but also criminal defendants from engaging in purposeful racial discrimination in their exercise of peremptory challenges. *See Georgia v. McCollum*, 505 U.S. 42, 120 L. Ed. 2d 33 (1992); *State v. Austin*, 111 N.C. App. 590, 597, 432 S.E.2d 881, 886 (1993) ("Clearly, after *McCollum*, a trial court is now vested with the authority to conduct [a *Batson*] inquiry [into peremptory challenges made by defense counsel] when the State has established a *prima facie* case of discrimination.").

To allow for appellate review, the trial court must make specific findings of fact at each stage of the *Batson* inquiry that it reaches. *State v. Sanders*, 95 N.C. App. 494, 500, 383 S.E.2d 409, 413, *disc. review denied*, 325 N.C. 712, 388 S.E.2d 470 (1989). Appellate courts must uphold the trial court's findings unless they are "clearly erroneous."[1] *State v. Barnes*, 345 N.C. 184, 210, 481 S.E.2d 44, 58 (quoting

---

1. Normally our state appellate courts utilize an "any competent evidence" standard of review of the findings of fact entered by the trial court. *See, e.g., State v. Wade*, 55 N.C. App. 258, 260, 284 S.E.2d 758, 760 (1981), *appeal dismissed*, 305 N.C. 307, 290 S.E.2d 707 (1982). The "clear error" standard is a federal standard of review adopted by our courts for appellate review of the *Batson* inquiry. *See Rouse*, 339 N.C. at 78, 451 S.E.2d at 553 (citing *Hernandez v. New York*, 500 U.S. 352, 369, 114 L. Ed. 2d 395, 412 (1991)).

*State v. Rouse*, 339 N.C. 59, 78, 451 S.E.2d 543, 553 (1994), *reconsideration denied*, 339 N.C. 619, 453 S.E.2d 188, *and cert. denied*, 516 U.S. 832, 133 L. Ed. 2d 60 (1995)), *cert. denied sub nom., Chambers v. North Carolina*, —— U.S. ——, 139 L. Ed. 2d 134 (1997), *and cert. denied*, —— U.S. ——, —— L. Ed. 2d ——, 1998 WL 125185 (1998). "[W]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Hernandez v. New York*, 500 U.S. 352, 369, 114 L. Ed. 2d 395, 412 (1991) (reaffirming *Batson*'s "treatment of intent to discriminate as a pure issue of fact"). Furthermore, this standard allows for reversal only when a "reviewing court on the entire evidence [is] left with the definite and firm conviction that a mistake ha[s] been committed." *Id.*

## A. *Prima Facie* Showing

[2] To challenge the defense counsel's exercise of the defendant's peremptory challenges, the State must first establish a *prima facie* case of racial discrimination. *Barnes*, 345 N.C. at 209, 481 S.E.2d at 57. A *prima facie* case "need only show that the relevant circumstances raise an inference that [counsel] used peremptory challenges to remove potential jurors solely because of their race." *State v. Quick*, 341 N.C. 141, 144, 462 S.E.2d 186, 188 (1995). "Relevant circumstances" include:

> [T]he defendant's race, the victim's race, the race of the key witnesses, questions and statements of the [challenging attorney] which tend to support or refute an inference of discrimination, repeated use of peremptory challenges against [prospective jurors of a particular race] such that it tends to establish a pattern of strikes . . . , use of a disproportionate number of peremptory challenges to strike [prospective jurors of a particular race] in a single case, and the [challenging attorney's] acceptance rate of potential [jurors of this race].

*Quick*, 341 N.C. at 145, 462 S.E.2d at 189. A showing that more jurors of one race were peremptorily challenged than jurors of another race does not, standing alone, establish a *prima facie* case of racial discrimination. *State v. Walls*, 342 N.C. 1, 36, 463 S.E.2d 738, 755 (1995) (mere showing that State peremptorily challenged more African-American jurors than Caucasian jurors was insufficient to establish a *prima facie* case of racial discrimination), *cert. denied*, —— U.S. ——, 134 L. Ed. 2d 794 (1996); *Quick*, 341 N.C. at 145, 462 S.E.2d at 189 ("[I]t is not unconstitutional, without more, to strike one or more blacks from the jury.").

In this case, Defendant is African-American. Just prior to defense counsel's exercise of Defendant's peremptory challenges, the jury consisted of six African-American jurors and six Caucasian jurors. Defense counsel peremptorily challenged no African-American jurors at this point, but did peremptorily challenge four Caucasian jurors— two-thirds of the Caucasian jurors then available. These are relevant circumstances tending to reveal a "pattern of strikes" against Caucasian jurors by defense counsel, as well as defense counsel's disproportionate use of peremptory challenges to strike Caucasian jurors. Furthermore, in making out its *prima facie* case, the State noted other relevant circumstances, including the facts that African-American jurors remaining on the jury panel "parallel[ed]" the challenged Caucasian jurors (*i.e.*, one non-challenged African-American juror had previously heard about the case, one had previously served on a jury, and a close relative of one accepted African-American juror had been victimized in the past), that the challenged Caucasian jurors had indicated that they could consider both life imprisonment and the death penalty, and that none had demonstrated any partiality. The trial court, in "adopt[ing] the objections of the State" in its findings of fact, demonstrated its agreement on these points. These relevant circumstances in the record support the trial court's determination that a *prima facie* case of discrimination was shown by the State. Applying the clearly erroneous standard of review, we are not "left with the definite and firm conviction" that the trial court erred in this threshold *Batson* determination.

## B. Race-Neutral Explanation

[3] After the State has established a *prima facie* case, the burden shifts to defense counsel to offer "an explanation based on something other than the race of the juror[s]." *Hernandez*, 500 U.S. at 360, 114 L. Ed. 2d at 406. Defense counsel's explanations need not "rise to the level justifying a challenge for cause," and need not be "persuasive, or even plausible." *Barnes*, 345 N.C. at 209, 481 S.E.2d at 57. In fact, the challenges may be based on defense counsel's "legitimate hunches and past experience." *Id.* Defense counsel must, however, articulate "legitimate race-neutral reasons that are clear, reasonably specific, and related to the particular case to be tried." *Peterson*, 344 N.C. at 176, 472 S.E.2d at 732. "Unless a discriminatory intent is inherent in [defense counsel's] explanation, the reason offered will be deemed race neutral [at this secondary stage of the inquiry]." *Hernandez*, 500 U.S. at 360, 114 L. Ed. 2d at 406.

In this case, defense counsel's explanations for peremptorily challenging Cooke included that Cooke knew one of the State's expert witnesses, that her sister was a victim of a recent breaking and entering, and that her uncle worked in the same police department as officers involved in the case. Each of these reasons is reasonably specific and related to this case, and none, on their face, are racially motivated.

As for Russ and Moore, defense counsel stated that they were peremptorily challenged because defense counsel felt that they appeared to have "some difficulty with races." Both Russ and Moore had served in the military. Russ was a member of the VFW. Moore was a member of a gun club. Defense counsel noted that "on the experience of counsel," these associations were unsatisfactory to Defendant. Defense counsel was also concerned about some of Russ's facial expressions when questioned about a family member who had previously been raped. These reasons, like those given for Cooke, were reasonably specific, related to this case, facially race neutral, and based on defense counsel's "hunches and past experience."

Finally, defense counsel felt that Speight had been deceptive, and would not look defense counsel "in the eye." Again, these reasons are reasonably specific, related to the case, and facially race neutral.

The trial court found that defense counsel had "failed to advance race-neutral reasons for the peremptory challenges at issue," and therefore had "failed to rebut the prima facie case of purposeful racial discrimination." As any facially race-neutral reason offered by the challenging attorney "will be deemed race neutral" unless a discriminatory intent "is inherent in the explanation," the trial court clearly erred in finding that defense counsel had failed to offer race-neutral explanations for his peremptory challenges. Contrary to the trial court's finding, defense counsel successfully rebutted the State's *prima facie* case of racial discrimination. Although the trial court erroneously determined that defense counsel had failed to offer race-neutral explanations, it nonetheless continued the *Batson* inquiry as if defense counsel *had* offered race-neutral explanations.[2]

2. The procedure utilized by the trial court in this case, although not required, facilitates appellate review. In the event it is determined on appeal, as in this case, that the trial court erred in finding that race-neutral explanations were not offered by the challenging attorney, this Court can, on the record before it, review whether the explanations are pretextual without remanding for a new *Batson* hearing. *Cf. State v. Hall,* 104 N.C. App. 375, 384, 410 S.E.2d 76, 81 (1991) (remanding for a presiding criminal

## C. Pretextual Determination

[4] If defense counsel provides facially race-neutral reasons for the exercise of its peremptory challenges, the trial court must determine whether these reasons are merely pretextual excuses for purposeful discrimination. *See Hernandez*, 500 U.S. at 363-64, 114 L. Ed. 2d at 408. At this stage, "the [State] has a right of surrebuttal to show that [defense counsel's] explanations are pretextual." *Peterson*, 344 N.C. at 176, 472 S.E.2d at 732. In making this determination, the trial court should consider the totality of the circumstances, *Barnes*, 345 N.C. at 212, 481 S.E.2d at 59, including counsel's credibility, *State v. Thomas*, 329 N.C. 423, 432, 407 S.E.2d 141, 148 (1991) (noting that "the best evidence [of discriminatory intent] often will be the demeanor of the attorney who exercises the challenge"), *cert. denied*, —— U.S. ——, 139 L. Ed. 2d 41 (1997), and the context of the information elicited, *Sanders*, 95 N.C. App. at 502, 383 S.E.2d at 414. A disproportionate impact on prospective jurors of a particular race is also relevant to the trial court's decision, but is not dispositive. *Hernandez*, 500 U.S. at 363, 114 L. Ed. 2d at 408. In addition, even if answers of a prospective juror of one race who is later peremptorily excused are similar to those of a juror of another race who is not challenged, "this state of circumstances in itself does not necessarily lead to a conclusion that the reasons given by [defense counsel] were pretextual." *Barnes*, 345 N.C. at 212, 481 S.E.2d at 59 (citing *Rouse*, 339 N.C. at 80, 451 S.E.2d at 554).

In this case, the State noted on surrebuttal that Cooke was "a little girl" when her uncle retired from the police department, arguing that defense counsel's concern that Cooke had ties to the police department involved in this case was merely pretextual. The State noted that Moore was not obnoxious to defense counsel, as defense counsel had stated during his rebuttal, but was merely irritated because defense counsel had repeatedly asked Moore the same questions. The State also noted that the rape of Russ's family member, which concerned defense counsel, had occurred "nine to ten years ago." The trial court noted that it had "followed the *voir dire* examination closely, observed the demeanor of the jurors in question, and the attorneys, observed the expressions of the jurors and their reactions to the questions asked and listened to the tone of their voices and their answers to the questions propounded" in finding that

judge to hold a *Batson* hearing where the trial court had erred in determining that the *prima facie* showing had not been made and had therefore prematurely ended the *Batson* inquiry).

defense counsel's explanations were "vague and merely a pretext." Based on the record before us, we cannot say that the trial court clearly erred in finding that defense counsel's explanations were pretextual. It follows that the State has established purposeful discrimination; the trial court therefore properly refused to allow defense counsel's peremptory challenges against Cooke, Russ, and Moore.

II

**[5]** Defendant next contends that there was insufficient evidence to submit attempted armed robbery and first-degree murder in perpetration of a felony to the jury. We disagree.

A motion to dismiss is properly denied if substantial evidence is presented of each essential element of the offense. *State v. Roseborough*, 344 N.C. 121, 126, 472 S.E.2d 763, 766 (1996) (quoting *State v. Quick*, 323 N.C. 675, 682, 375 S.E.2d 156, 160 (1989)). In a criminal case, "[s]ubstantial evidence is evidence from which any rational trier of fact could find the fact to be proved beyond a reasonable doubt." *State v. McDowell*, 329 N.C. 363, 389, 407 S.E.2d 200, 215 (1991) (quoting *State v. Sumpter*, 318 N.C. 102, 108, 347 S.E.2d 396, 399 (1986)). We review the evidence in the light most favorable to the State, and the State is entitled to every reasonable inference arising from the evidence. *Quick*, 323 N.C. at 682, 375 S.E.2d at 160. Where the State relies on the defendant's confession to support its case, there must be additional evidence "which, when considered with the confession, supports the confession and permits a reasonable inference that the crime occurred." *State v. Corbett*, 339 N.C. 313, 334, 451 S.E.2d 252, 263 (1994) (quoting *State v. Trexler*, 316 N.C. 528, 532, 342 S.E.2d 878, 880 (1986)). The corroborating evidence, however, need not prove any element of the crime. *Id.*

To establish first-degree murder in the perpetration of a felony, "[t]he prosecution need only prove that the killing took place while the accused was perpetrating or attempting to perpetrate one of the enumerated felonies." *State v. Bell*, 338 N.C. 363, 386, 450 S.E.2d 710, 723 (1994), *cert. denied*, 515 U.S. 1163, 132 L. Ed. 2d 861 (1995). Attempted armed robbery, an "enumerated felon[y]," *see* N.C.G.S. § 14-17 (Supp. 1997), is defined as "unlawfully . . . attempt[ing] to take personal property from another or from any place of business" with the possession, use, or threatened use of a firearm. N.C.G.S. § 14-87(a) (1993).

**STATE v. COFIELD**

[129 N.C. App. 268 (1998)]

The evidence in the light most favorable to the State in this case includes Defendant's signed Statement,[3] in which Defendant stated that he carried a gun into the Store with his "hood pulled down to just above my eyes, and a bandanna over the bottom of my face to my nose." Defendant's Statement confesses that he "pointed the 9-millimeter [gun] at [Mullah] and said, 'Yo, give me your loot; give me your loot.' " Defendant confessed that when Mullah laughed at him, "I fired the gun and ran out." Defendant's Statement is supported by Massenburg's corroborating testimony that he saw Defendant enter the Store with a gun and heard a gunshot while Defendant was inside the Store, and by the fact that Mullah's fatally wounded body was found near the cash register. This additional evidence, when considered with Defendant's Statement, supports the Statement and permits a reasonable inference that Defendant, armed with a gun, shot and killed Mullah while unlawfully attempting to take cash from him in the Store. Thus there is substantial evidence in the record from which a rational trier of fact could find beyond a reasonable doubt that Defendant killed Mullah in the perpetration of the felony of attempted armed robbery.

### III

[6] Instructions on a lesser-included offense are required only when there is conflicting evidence as to a crucial element of the offense charged, and the evidence supports the elements of the lesser-included offense. *State v. Nelson*, 341 N.C. 695, 697, 462 S.E.2d 225, 226 (1995); *State v. Johnson*, 317 N.C. 417, 436, 347 S.E.2d 7, 18 (1986). A defendant's denial that he committed the offense does not constitute "conflicting evidence" as to an element of the offense. *State v. Williams*, 314 N.C. 337, 352, 333 S.E.2d 708, 719 (1985).

In this case, the State's evidence, as noted in Section II, supported a jury finding of first-degree murder in the perpetration of the felony of attempted armed robbery. At trial, Defendant denied shooting Mullah; a denial, however, does not constitute conflicting evidence of an element of the State's case. The trial court therefore did not err in refusing to submit second-degree murder to the jury.

---

3. We note that although Defendant assigned error to the trial court's admission of his Statement into evidence, Defendant fails to make reference to or argue this assignment of error in his brief before this Court, and thereby abandons this assignment of error. *See* N.C.R. App. P. 28(b)(5) ("Immediately following each question shall be a reference to the assignments of error pertinent to the question . . . . Assignments of error not set out in the appellant's brief, or in support of which no reason or argument is stated or authority cited, will be taken as abandoned.").

**SOUTH BLVD. VIDEO & NEWS v. CHARLOTTE ZONING BD. OF ADJUST.**

[129 N.C. App. 282 (1998)]

No error.

Judges WALKER and TIMMONS-GOODSON concur.