STATE OF NORTH CAROLINA, Plaintiff v. THADDIUS RAEFIELD WRIGHT,
Defendant

No. COA07-611

(Filed 18 March 2008)

**Jury— selection—*Batson* challenge—failure to provide race-neutral explanations for each peremptory challenge used on African-Americans**

> The trial court erred in an assault with a deadly weapon with intent to kill inflicting serious injury and first-degree burglary case by finding the State had not engaged in purposeful discrimination when the State did not provide a race-neutral explanation for each African-American it removed from the jury by peremptory challenge, and defendant is granted a new trial, because: (1) defendant's counsel brought all seven of the State's peremptory challenges to the court's attention since they were all used on African-American members of the jury pool; (2) at most, the prosecutor offered a race-neutral explanation for five of the seven pertinent potential jurors; and (3) the State failed to meet its burden to offer a race-neutral explanation for each peremptory challenge at issue, and the trial court could not have made a finding of a valid excuse for each of those jurors when the prosecutor had not even offered any explanation as to two of the jurors.

Appeal by defendant from judgment entered on or about 27 October 2006 by Judge Kenneth C. Titus in Superior Court, Durham County. Heard in the Court of Appeals 28 November 2007.

*Attorney General Roy A. Cooper, III, by Assistant Attorney General Tina A. Krasner, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender Kristen L. Todd, for defendant-appellant.*

STROUD, Judge.

Defendant was convicted by a jury of assault with a deadly weapon with intent to kill inflicting serious injury and first degree burglary. Defendant appeals. The dispositive question before this Court is whether the trial court erred by finding the State had not engaged in purposeful discrimination when the State did not provide a race-neutral explanation for each African-American whom it had

removed from the jury by peremptory challenge. For the following reasons, we grant a new trial.

## I. Background

The State's evidence tended to show the following: On 17 November 2004, Ruben Alvin David Garnett ("Garnett") was at home at Foxfire Apartments with his paralyzed cousin Demoris Wall ("Wall"), and his cousin's girlfriend, Akeisha Judd ("Judd"). Garnett awoke to "a kick on the door and somebody yelling 'police'." Garnett got up to open the door and was shot four to five times. Garnett went back into the room he had been in and "played dead." Garnett heard someone come in and then passed out. Judd heard gunshots at her bedroom door, and Wall called the police. When Garnett awoke he found Jigger, the dog, dead and the front door off of its hinges.

Officer Douglas Rausch ("Officer Rausch"), a police officer with the City of Durham was on his way home when he received a call for a shooting on Wyldewood. Officer Rausch

> spotted a vehicle [("suspect vehicle")] coming out of the Wyldewood area, turning right onto Stadium, which would make it come straight at [him]. And as [Officer Rausch] passed, there were three occupants in the [suspect vehicle], and they gave, in [his] terms, a million-mile stare, which meant [they] had seen [Officer Rausch].

As Officer Rausch turned around the suspect vehicle picked up speed. Officer Rausch "gave the other officers that were coming to the scene the description of the [suspect] vehicle, license plate, and told them to be on the lookout[.]" Approximately six to eight vehicles joined in the chase. Defendant and two others engaged the police in a chase which lasted approximately an hour and ended when the suspect vehicle collided with another vehicle. Three firearms were recovered—one in the front passenger seat of the suspect vehicle, one on the curb by the suspect vehicle, and one on Rowemont Street, a street on the chase route. On or about 7 March 2005, defendant was indicted for assault with a deadly weapon with intent to kill inflicting serious injury (hereinafter referred to as "AWDWIKISI"), first degree burglary, three counts of possession of a firearm by a felon, felonious speeding to elude arrest, and cruelty to animals. Trial was held on 23-27 October 2007. After jury selection, defendant's counsel "offer[ed] an objection based on Batson [because] every single person the State dismissed from [the] jury panel happened to be of the

African-American persuasion[,] the same race as the defendant." The following dialogue took place:

> MS. BAKER-HARRELL: If we go back through it, Juror Number One that was originally in the box that was dismissed by the State was Ms. Mack. She was a black female. Juror Number Two that was dismissed by the State was a black male—sorry, had to look back through my notes. He was a black male. Juror Number Seven was a black male. That was Mr. Williams. Juror Number Nine was a black male. That was Mr. Stevenson, who got confused with—Mr. Stevens got confused with Mr. Stevenson.
>
> THE COURT: He was a white male.
>
> MS. ELLIS: He was a white male.
>
> MS. BAKER-HARRELL: Okay. Now, Mr. Stevens was the white male. All right.
>
> THE COURT: Both were white males.
>
> MS. BAKER-HARRELL: Juror Number One—
>
> THE COURT: Stevens and Stevenson were both white males.
>
> MS. BAKER-HARRELL: No, sir. I would beg to disagree with the Court.
>
> THE COURT: Ms. Baker-Harrell, you may disagree with me, but you're wrong. Both Mr. Stevens and Mr. Stevenson were both white males.
>
> MS. BAKER-HARRELL: Okay. Okay. Your Honor, I—I respectfully disagree, but I'll just point out that Juror Number Nine was the gentleman who was married, and who pointed out—
>
> THE COURT: Oh, I'm sorry. It was Mr. Johnson.
>
> MS. ELLIS: Your Honor, yes. Mr. Stevenson is a black man that has the DWI.
>
> THE COURT: That's correct.
>
> MS. BAKER-HARRELL: Yes, sir.
>
> THE COURT: Oh, I apologize to you.

STATE v. WRIGHT

[189 N.C. App. 346 (2008)]

MS. ELLIS: I did the same thing; I pulled up Mr. Johnson.

THE COURT: I'm sorry. That was Mr. Johnson.

MS. BAKER-HARRELL: Yes, sir. And again, sir, I wasn't trying to be rude, but I did note it—

THE COURT: Make your points.

MS. BAKER-HARRELL: —on there that he was a black male, sir.

Juror Number 12, Ms. Reeves, was excused by the State. She was a preschool teacher. She was a black female. The next person—I'm trying to find her—excused by the State was seated in Mr. Johnson's spot, which was Juror Number Ten, and she became Juror Number Ten. Her name was Ms. Miller. That was a black female, Alberta Miller.

THE COURT: That was in number nine.

MS. ELLIS: Nine.

THE COURT: Mr. Stevenson's seat.

MS. BAKER-HARRELL: Okay. I'm sorry. I switched my notes when I was—when you told me it wasn't, and I said, no, I got it. I apologize. I got them in the wrong spot. But again though, she was dismissed by the State. She was a black female, and then in going to the alternate juror that was presented to the Court, Ms. Robin Evans, she was a black female, Your Honor, and you know, if you look at—that's why I'm pointing out to the Court that everybody that's been dismissed by the State have been of African-American persuasion, which happens—so happens to be the race of my client.

THE COURT: All right.

Ms. Ellis, do you wish to respond?

MS. ELLIS: Yes, Your Honor. Going through each of them, Ms. Brown, who was also a black female, was the first to be impanelled [sic], seat number six. She was left on the panel. Ms. Mary Bass was left on the panel. The reasons why that the others were dismissed—the alternate juror had no pets. That's one of the things that we were looking for were pets, not necessarily color. Your Honor, Mr. Stevenson was dismissed. He had a DWI, 72 hours of jail time. I mean, can go on and on with each of the

jurors. There are reasons why that they were picked. It wasn't picked because of their race or anything like that.

The jurors that she stated, one of them stated that he had been pulled over several times and had bad feelings towards the police for being pulled over. One of them was a retired school-teacher. The other one, Mr. Williams, who actually knew the officer, had spoken with the officer; and the investigator stated that he had a lot of interaction with that juror because of his son being tutored by him, and I should also like to put on the record that the investigator in this case is black.

Your Honor, the reasons why each of these jurors were eliminated were not because of their race, were not because of their—it was because of their background. Your Honor, it was because of their background that they were dismissed, not because of their race. The State has left several black persons on the list. I mean, she has basically argued a *Batson* motion when I have left many and passed many panels of jurors that had included several black people on it.

. . . .

THE COURT: The Court, in considering the Motion for a *Batson* challenge, you're not challenging the original panel, I presume. You're simply challenging those that the district attorney has used in terms of making peremptory challenges towards those jurors. The Court finds that there were valid reasons for excusing—I won't go over every one, but valid reasons for excusing peremptorily several of the members of the jury panel.

The Court notes that both the plaintiff and—or the State and the defendant exercised every challenge they had, including the additional challenge for the alternate juror, and that the jury panel as it is presently consisted, is an accurate reflection of the community, and the Court does not find that the peremptory challenges exercised by the State, there being no challenges for cause that were granted by the Court, that any of the peremptory challenges were based solely on race.

The trial judge later dismissed the possession of a firearm by a felon charges. On or about 27 October 2006, defendant was found not guilty of speeding to elude arrest or cruelty to animals and was convicted of AWDWIKISI and first degree burglary. Defendant appeals.

## II. Peremptory Challenges

Defendant argues that "the trial court committed reversible error by finding that the State had not engaged in purposeful discrimination when it used all of its peremptory challenges to strike African-American jurors and did not provide race-neutral explanations for each juror." For the following reasons, we agree, and thus grant a new trial. "The 'clear error' standard is a federal standard of review adopted by our courts for appellate review of the *Batson* inquiry." *State v. Cofield*, 129 N.C. App. 268, 276 n.1, 498 S.E.2d 823, 829 n.1 (1998).

> In *Batson v. Kentucky*, 476 U.S. 79, 90 L. Ed. 2d 69 (1986), *modified, Powers v. Ohio*, 499 U.S. 400, 113 L. Ed. 2d 411 (1991), the United States Supreme Court established a three-step test to determine whether the State's peremptory challenges of prospective jurors are purposefully discriminatory. Under *Batson*, the defendant must first successfully establish a *prima facie* case of purposeful discrimination. *Batson*, 476 U.S. at 96; 90 L. Ed. 2d at 87-88. If the *prima facie* case is not established, it follows that the peremptory challenges are allowed. If the *prima facie* case is established, however, the burden shifts to the prosecutor to offer a race-neutral explanation for each peremptory challenge at issue. *Id.* at 97, 90 L. Ed. 2d at 88. If the prosecutor fails to rebut the *prima facie* case of racial discrimination with race-neutral explanations, it follows that the peremptory challenges are not allowed.

*Cofield* at 274-75, 498 S.E.2d at 828-29. "Finally, the trial court must determine whether the defendant has proven purposeful discrimination." *State v. Lyons*, 343 N.C. 1, 11, 468 S.E.2d 204, 208, *cert. denied*, 519 U.S. 894, 136 L. Ed. 2d 167 (1996) (citing *Hernandez v. New York*, 500 U.S. 352, 359, 114 L. Ed. 2d 395, 405 (1991)).

> If the prosecutor volunteers his reasons for the peremptory challenges in question before the trial court rules whether the defendant has made a *prima facie* showing or if the trial court requires the prosecutor to give his reasons without ruling on the question of a *prima facie* showing, the question of whether the defendant has made a *prima facie* showing becomes moot, and it becomes the responsibility of the trial court to make appropriate findings on whether the stated reasons are a credible, nondiscriminatory basis for the challenges or simply pretext.

*State v. Williams*, 343 N.C. 345, 359, 471 S.E.2d 379, 386 (1996), *cert. denied*, 519 U.S. 1061, 136 L. Ed. 2d 618 (1997) (citing *Hernandez v. New York*, 500 U.S. 352, 359, 114 L. Ed. 2d 395, 405 (1991); *State v. Robinson*, 336 N.C. 78, 93, 443 S.E.2d 306, 312 (1994)).

Whether defendant established a *prima facie* case is moot as the prosecutor here "volunteer[ed] his reasons for the peremptory challenges"; the question now before us is whether the prosecutor has met its burden of "offer[ing] a race-neutral explanation for *each* peremptory challenge at issue." *Cofield* at 275, 498 S.E.2d at 828 (emphasis added); *see Williams* at 359, 471 S.E.2d at 386. *Black's Law Dictionary* defines "each" as "[a] distributive adjective pronoun, which denotes or refers to every one of the persons or things mentioned; every one of two or more persons or things, composing the whole, separately considered." *Black's Law Dictionary* 455 (5th ed. 1979).

Several North Carolina cases have addressed issues raised by a *Batson* motion; however, in all of these cases, unlike the case before us, the prosecutor provided a race-neutral explanation for each and every one of the challenged jurors. *See State v. Carmon*, 169 N.C. App. 750, 756, 611 S.E.2d 211, 215 (2005); *State v. Matthews*, 162 N.C. App. 339, 340-41, 595 S.E.2d 446, 447-48, *disc. rev. denied*, 358 N.C. 379, 598 S.E.2d 140 (2004); *State v. White*, 131 N.C. App. 734, 739-40, 509 S.E.2d 462, 466 (1998); *Cofield* at 270-72, 498 S.E.2d at 826-27; *Lyons* at 11-13, 468 S.E.2d at 208-09.

In the present case defendant's counsel brought all seven of the State's peremptory challenges to the court's attention because they were all used on African-American members of the jury pool, including, (1) juror number one, Ms. Mack, (2) juror number two, Ms. Pettiford, (3) juror number seven, Mr. Williams, (4) juror number nine, Mr. Stevenson, (5) juror number twelve, Ms. Reeves, (6) juror number nine in Mr. Stevenson's seat, Ms. Miller, and (7) the alternate juror, Ms. Evans. At most the prosecutor offered a race-neutral explanation for five of the seven aforementioned jurors. The prosecution responded,

[(1)] the alternate juror had no pets. . . .[(2)] Mr. Stevenson was dismissed. He had a DWI, 72 hours of jail time. . . . The jurors that she stated, [(3)] one of them stated that he had been pulled over several times and had bad feelings towards the police for being pulled over. [(4)] One of them was a retired schoolteacher. [(5)] The other one, Mr. Williams, who actually knew the officer, had

spoken with the officer; and the investigator stated that he had a lot of interaction with that juror because of his son being tutored by him[.]

The prosecution also stated,

I mean, can go on and on with each of the jurors. There are reasons why that they were picked. It wasn't picked because of their race or anything like that. . . . Your Honor, the reasons why each of these jurors were eliminated were not because of their race, were not because of their—it was because of their background. Your Honor, it was because of their background that they were dismissed, not because of their race.

Here the prosecutor has failed to "offer a race-neutral explanation for *each* peremptory challenge at issue." *Cofield* at 275, 498 S.E.2d at 828 (emphasis added). The prosecutor gave race-neutral explanations for its use of peremptory challenges on five of the jurors; however, two jurors are not specifically mentioned at all.[1] The plain language of this Court requires the prosecution to "offer a race-neutral explanation for *each* peremptory challenge at issue." *Id.* (emphasis added). "Each" denotes or refers to "every one of the persons or things mentioned; every one of two or more persons or things, composing the whole, separately considered." *Black's Law Dictionary* 455. The prosecutor here failed to provide a race-neutral explanation for "every one" of the jurors mentioned by the defendant. *See id.* Though the prosecutor speaks of the group as a whole, the prosecutor did not, in her language to the court, "separately consider[]" each juror mentioned by defense counsel. *See id.*

It was "the responsibility of the trial court to make appropriate findings on whether the stated reasons are a credible, nondiscriminatory basis for the challenges or simply pretext." *Williams* at 359, 471 S.E.2d at 386. Although the trial court stated its finding "that there were valid reasons for excusing—I won't go over every one, but valid reasons for excusing peremptorily several of the members of the jury panel," the trial court could not and did not make findings as to *each*

---

1. From the record before us it appears that Mr. Stevens was a white male and Mr. Stevenson was a black male. During jury selection the State said it would like to excuse Mr. Stevens. However, from the record it appears Mr. Stevenson was actually excused and Mr. Stevens remained on the jury. The practical effect of this means that the State used all seven of its peremptory challenges on African-Americans. However, assuming *arguendo*, that the State did excuse Mr. Stevens and Mr. Stevenson did remain on the jury, the State still provided race-neutral explanations for only five of the six jurors mentioned by defendant's counsel.

IN RE Z.A.K.

[189 N.C. App. 354 (2008)]

juror, as the prosecutor had not even offered any explanation as to two jurors. The State thus failed to meet its burden in response to defendant's showing of a *Batson* violation, and the trial court erred in makings its "findings on whether the stated reasons are a credible, nondiscriminatory basis for the challenges or simply pretext" as there was no explanation offered for two of the jurors. *See id.* We appreciate the challenges faced by the prosecutor and the trial court in attempting to comply with the requirements of *Batson*; however, we are duty bound to follow the plain language of the law. As the prosecutor failed to provide a race-neutral explanation as to *each* challenged juror mentioned by the defendant the trial court clearly erred in not granting defendant's *Batson* motion. *Cofield* at 275, 498 S.E.2d at 828.

### III.  Conclusion

For the aforementioned reasons, we grant a new trial, and thus defendant's other assignments of error need not be addressed as they are not likely to arise at a new trial.

NEW TRIAL.

Judges HUNTER and CALABRIA concur.